THE GERMAN AMERICAN SEMINARY v. HERMAN KIEFER.

*Election of remedy—Laches—Equitable remedy outlawed.*

*It seems* that bringing suit against only one of several persons to recover an entire sum received by him under a constructive trust, but divided with the others, should preclude separate suits against the rest if the complainant had full knowledge of their interests when he elected to sue a particular defendant.

Equity will not interfere where, with full knowledge of the facts, suit on a merely constructive trust has been delayed until many of the persons concerned in the transaction are dead, and the recollection of the others is such that the court must be in doubt whether the case established by the evidence is not partial and misleading.

Courts of equity will not encourage the splitting of causes of action and needless litigation.

An equitable action of assumpsit, if it lies at all, will be outlawed by the same lapse of time as bars an action at law, particularly if it rests on a merely constructive trust and the defendant has always denied the equity and relied on an adverse claim.

Whether a trustee's sale of corporate property to trustees and members of the corporation can be sustained if seasonable objection is raised—*Q.*

Appeal from the Superior Court of Detroit. Submitted January 23. Decided February 11.

BILL FOR ACCOUNTING. Dismissed. Complainant appeals.

*Alfred Russell* for complainant. Trustees cannot rightfully put themselves in a position where their interests will be adverse to the beneficiary. *Jackson v. Ludeling* 21 Wal. 625; Letter of Sewell, Vanderpoel and Bennett, 9 Chic. Leg. News, 31; *Ingerson v. Starkweather* Wal. Ch. 346; *Clute v. Barron* 2 Mich. 192; *People v. Overyssel* 11 id. 222; *Flint & P. M. Ry. v. Dewey* 14 id. 477; *Wardell v. Union Pacific R. R.* 4 Dill. 320; where the defendant is not placed in any different position by lapse of time, it will not be considered, *Allore v. Jewell* 94 U. S. 512; *Sullivan v. R. R.* id. 811; *Wollaston v. Tribe*

43 MICH.—14.

L. R. 9 Eq. 44; *May v. LeClaire* 11 Wal. 217; *Kempson v. Ashbee* L. R. 10 Ch. App. 15; *Hatch v. Hatch* 9 Ves. 292; an election of remedy will not preclude choosing another unless it involves a contradictory action, *Thompson v. Howard* 31 Mich. 312.

*Otto Kirchner* and *Ashley Pond* for defendant. A trustee may buy directly from a *cestui que trust* if there is no fraud, *Schwarz v. Wendell* Wal. Ch. 267, which case is distinguished from *Dwight v. Blackmar* 2 Mich. 330; *Beaubien v. Poupard* Har. Ch. 206; and compare *Ashhurst's Appeal* 60 Penn. St. 296; *Spencer's Appeal* 80 Penn. St. 317; *Twin Lick Oil Co. v. Marbury* 91 U. S. 587; Green's Brice's Ultra Vires 402; proceedings to rescind a contract must be taken promptly, *DeArmand v. Phillips* Wal. Ch. 186; *McLean v. Barton* Har. Ch. 279; *Street v. Dow* id. 427; *Wilbur v. Flood* 16 Mich. 40; *Russell v. Miller* 26 Mich. 1; *Dunks v. Fuller* 32 Mich., 242; *Miller v. Thompson* 34 Mich. 10; *Loomis v. Brush* 36 Mich. 48; *Phillips v. Rogers* 12 Met. 405; *Bruce v. Davenport* 3 Keyes 472; the Statute of Limitations applies to a suit in equity if the demand could have been recovered at law, *Kane v. Bloodgood* 7 Johns. Ch. 248; *Sherwood v. Sutton* 5 Mas. 144; *Sheppards v. Turpin* 3 Gratt. 374; *Field v. Wilson* 6 B. Mon. 479; *Bruen v. Hone* 2 Barb. 586; *Southwick v. Everest* 4 Hill 71; resort cannot be had to equity to evade the statute, *Wilhelm v. Caylor* 32 Md. 151; *Mobley v. Cureton* 2 S. C. 140; *Clay v. Clay* 7 Bush 95; *Badger v. Badger* 2 Clifford 137; *Kane County v. Herrington* 50 Ill. 232; *McCartee v. Camel* 1 Barb. Ch. 456; *Perkins v. Cartmell* 4 Har. (Del.) 270; *Manchester v. Mathewson* 3 R. I. 237; *Dean v. Dean* 1 Stockt. 425; *Railroad Co. v. Bowler* 9 Bush 468; *Miller v. McIntyre* 1 McL. 85: 6 Pet. 61; *Elmendorf v. Taylor* 10 Wh. 152; *Bailey v. Carter* 7 Ired. Eq. 282; *Nimmo v. Stewart* 21 Ala. 682; *Wilson v. Anthony* 19 Ark. 16; *Knight v. Brawner* 14 Md. 1; *Goff v. Robins* 33 Miss. 153; *Hill v. Boyland* 40 Miss. 618; *Bruen v. Hone*

2 Barb. 586; *Oakland v. Carpentier* 13 Cal. 540; *Murphy v. Blair* 12 Ind. 184; *Phares v. Walters* 6 Ia. 106; *Pratt v. Northam* 5 Mas. 95; *Gunn v. Brantley* 21 Ala. 633; *Crocker v. Clements* 23 Ala. 296; *Teackle v. Gibson* 8 Md. 70; *Manning v. Warren* 17 Ill. 267; *Young v. Mackall* 3 Md. Ch. 398; *Breckenridge v. Churchill* 3 J. J. Marsh. 11; *Burditt v. Grew* 8 Pick. 108; *Paff v. Kinney* 1 Bradf. Sur. 1; the statute does not apply only where there are express trusts or actual fraud, *Strimpfler v. Roberts* 18 Penn. St. 302; *Michoud v. Girod* 4 How. 503; *Clarke v. Boorman* 18 Wal. 506; to escape the bar of the statute the complainant must allege his ignorance of the fraud, *Carr v. Hilton* 1 Curt. C. C. 390; the election to sue a particular defendant for an entire fund debars complainant from afterwards suing another for part of it (*Lathrop v. Bampton* 31 Cal. 17; 4 Kent's Com. 307; 2 Story's Eq. Jur. § 1262) after he has had a decree for it, Lindley Partnership 828; Pars. Partnership 65; *King v. Hun* 3 M. & W. 494; *Exp. Higgins* 3 De G. & J. 33; and equity will not relieve against this result, *Perry v. Johnson* 4 Johns. Ch. 64.

COOLEY, J. The bill in this case is filed to compel the defendant to account for moneys which it is claimed are held by him in constructive trust for the complainant. The record is somewhat voluminous, and the evidence conflicting, but it will be sufficient for the purposes of this decision to state the facts as we find them established by the evidence or by the admissions of the parties.

In January, 1865, complainant was owner of a considerable body of pine lands in the county of Midland in this State, and was desirous of selling them. The official board of the seminary at that time consisted of Julius Stoll, Bernard Stroh, Edward Eccard, Rudolph Diefenbeck, Karl Busch, Edward Kanter and the defendant. The lands had been thought worth from two to four dollars an acre, but purchasers were not found. Finally Mr. W. H. Craig offered one dollar an acre, and

a committee to whom the board had referred the matter were disposed to close a bargain at that price. Mr. Stroh objected to this, and thought a man should be sent to examine the lands. He finally agreed that if that course should be adopted he would guarantee that the corporation should lose nothing by it, and that if Mr. Craig should withdraw his offer in the meantime Mr. Stroh would himself take the lands at the price offered. This was agreed to, and Mr. Charles Stange was sent to learn what he could about the lands. He went, and on his return reported verbally his opinion that the lands were worth from six to ten shillings an acre; the evidence on the report being conflicting, but ranging between these sums. It was then arranged that the lands should be put up at auction and sold to the highest bidder, and February 2, 1865, was fixed upon as the time. The trustees came together at that time, and a few others who it was thought might be disposed to bid on the lands. The defendant took some pains to invite in parties who were known by him to be able to become purchasers. The quantity of land offered was about 3700 acres, and bids were made for it, beginning with one of $4100 by Mr. Stroh, and closing with one of $5100 by the same person, and the lands were struck off to him. Mr. Craig was a bidder several times, closing with an offer of $5050. The lands, by request of Mr. Stroh, were deeded to his wife.

It was afterwards known that Mr. Stroh's purchase was made on an understanding with Mr. Stange, Mr. Arnold Kaichen and the defendant, that each of them should take equal interests with him in the lands, and that this understanding was carried out. The reason assigned by the parties for making this arrangement was that they were all interested in the seminary, and anxious to assist it by procuring as much for the lands as possible, but none of them were willing to take the whole risk of buying at the price which was offered; and we are satisfied from all the evidence in the case

that the land at that time had no definite market value, and that the parties buying could then have counted upon a profit from their purchase only by holding the title for some considerable period. Some public criticism of the sale appeared in the newspapers soon after it took place, but at a meeting of the corporation held more than a year afterwards, a resolution was adopted approving of the sale and of the action of the trustees respecting it.

Within two years after the sale the price of pine lands in the part of the State where these lands were situated began to go up rapidly. This was due in part to the building of a railroad which gave better access to the territory, and in part to an increased demand for pine timber. In October, 1868, Stroh sold all the pine timber from these lands to Newell Barnard for $24,000, receiving his pay in instalments, the last of which was made in 1872. This sum was divided with Stange, Kaichen and the defendant, each receiving $6000. In 1874 after there had been an entire change in the trustees of the seminary, it was decided to proceed against Stroh to charge him as constructive trustee of the seminary in holding these lands and selling the timber, and a bill was accordingly filed against him in the Midland circuit in chancery, which resulted in a decree made November 17, 1876, which set aside the conveyance of the lands to Stroh as fraudulent, and directed that he pay forthwith to complainant the sum of $14,006 and the costs. No appeal was taken from this decree, but meantime Mr. Stroh had become insolvent, and the personal decree uncollectible. The present bill was then filed, the purpose of which is to collect from the defendant the sum which he received on the sale of the timber from these lands.

It is alleged in the bill that complainant did not discover the interest of this defendant in the purchase until some time in the course of the suit against Stroh. This allegation is not sustained by the evidence. It appears

beyond dispute that some of the persons who were trustees at the time of the sale knew of defendant's interest soon afterwards, and the evidence is full and conclusive that the new board were fully aware of it before beginning suit against Stroh, and that they deliberately chose, with knowledge of all the facts, to proceed against Stroh alone, and not to proceed against this defendant. It was not until that remedy had been found ineffectual that this suit was brought.

The position of the case then is this: Complainant has charged Stroh as constructive trustee, electing not to join this defendant, and has obtained the decree sought for. This suit, then, is instituted to recover from defendant the sum of money known to have been received by him. The bill calls for no discovery and no accounting, but simply for the payment to complainant of the moneys received by defendant from Stroh. It is therefore a suit in equity to recover a sum of money had and received by the defendant to complainant's use: an equitable action of assumpsit and nothing more.

Whether the case can be distinguished from *Bay City Bridge Co. v. Van Etten* 36 Mich. 210, in which it was held that jurisdiction could not be given to equity of a claim for money by merely charging fraud in its reception, we shall not stop to consider, as we think there are other grounds on which the bill should be dismissed. If the proper authorities of the complainant intended to disaffirm the transaction in question, as far as the defendant was concerned, we think that they lost the right by delaying beyond all reason the institution of suit.

It had been known for ten years by members of the board of trustees that defendant was interested in Stroh's purchases. It was known by the board generally that such was the fact for some time before the suit was brought against Stroh. The institution of a suit under such circumstances against Stroh alone, with the deliberate decision not to proceed against the defendant, if not

a conclusive election on the part of complainant as between remedies, was at least a circumstance of high importance in its bearing upon this equitable complaint against this defendant afterwards. It is not the policy of courts of equity to encourage needless litigation and the splitting up of causes of action; and if the purpose existed to pursue the defendant at all, he should have been joined in the suit against Stroh. On the theory of the original suit he was as much constructive trustee as Stroh was: the case against both rested upon the same facts, and a second suit, if the two were to be proceeded against separately, would needlessly duplicate the labor, trouble and expense.

But another fact is also of high importance. While complainant has been delaying to bring suit against this defendant, quite a number of the persons who must have known the principal facts in the case have been taken away by death. Among these are Karl Busch and Edward Eccard, two of the trustees who were present at the sale, Rudolph Diefenbeck, who acted as auctioneer in making the sale, Anthony Lederle, who was prominent as a member of the corporation in making the sale, and Arnold Kaichen, one of the purchasers. Thus a very considerable proportion of all the persons who presumptively knew all the facts can no longer testify to them, and it is manifest from the discrepancies in the testimony given by others that their memory of the facts has been much obscured by time. If the defendant's connection with the transaction had but recently come to the knowledge of the officers of the corporation, this might be no conclusive reason for refusing to the complainant relief; but it would be the height of injustice to permit complainant, with full knowledge of the facts, to delay suit while the persons who were familiar with the facts were one by one passing away, and at last bring suit under circumstances which at the best must leave the court in doubt whether the remaining evidence does not disclose a partial, defective and misleading case.

A court of equity ought to refuse interference under such circumstances. *Campau v. Van Dyke* 15 Mich. 371; *Russell v. Miller* 26 Mich. 1.

But complainant's demand is more than a stale claim; it is equitably barred. As is said above, the suit is a suit to recover a sum of money had and received by defendant to complainant's use. The moneys were received by defendant in 1868, 1869, 1870, 1871 and 1872. This suit was instituted in 1879. Had the appropriate action of assumpsit been brought this claim would have been barred by the statute of limitations, which requires action of assumpsit to be brought within six years after the cause of action accrued. Conceding for the purposes of this case that complainant had a right to proceed in equity, yet the period allowed by law for bringing suit could not thereby be enlarged. *Smith v. Davidson* 40 Mich. 632; *Strimpfler v. Roberts* 18 Penn. St. 302. This is an old rule and a just one. Equity applies the statute of limitations by analogy.

There is a well understood exception in the case of actual trusts founded on and resting upon the mutual confidence of the parties; but as a case of constructive trust, resting upon a charge of fraud, and where the person sought to be charged has constantly denied the equity set up and stood upon an adverse claim, is not within the exception or within its reason. *Covington etc. R. R. Co. v. Bowler's Heirs* 9 Bush 468. Every reason for prompt action that can apply in any case is forcible here. We are therefore of opinion that if complainant ever had any equity it is barred by laches in bringing suit, and barred by the statute of limitations applied by analogy as courts of equity apply it.

We deem it proper also to add that the evidence does not convince us that any actual fraud was ever perpetrated or contemplated. But for the great and unanticipated rise in the value of pine lands in Midland county the charge of fraud would probably have never been made, or at least, never been taken notice of

by the corporation. Whether under the circumstances the sale made to persons who were members of the corporation, and two of them trustees, would have been upheld had suit been instituted seasonably we do not consider. Concurring in the general conclusions reached by the judge of the Superior Court, we order an affirmance of his decision with costs.

The other Justices concurred.