EDWARD V. CICOTTE v. THE CORPORATION OF THE CATHO-
LIC, APOSTOLIC AND ROMAN CHURCH OF ST. ANNE.

*Corporations—Liable like natural persons on contracts—Services—Implied contract to compensate for—Performance of services not sufficient to create, if the surrounding circumstances rebut the inference—Religious society—Claim of trustee for pay for services rendered—In absence of express contract for payment, competent to show that such was not the custom of the corporation—Individual recognition by trustees of plaintiff's claim, inadmissible.*

1. Corporations, of whatever character, are placed upon the same footing as natural persons in regard to their contracts, and the implications upon which they may be based.

2. The simple fact that services are rendered does not raise a liability on the part of the person for whom they are rendered to pay for the same, even though done at his request, if the circumstances are such as to rebut the inference that compensation is to be made. When rendered from kindly motives and with charitable intentions, the law will not imply a promise of compensation.

3. In a suit by a trustee of a religious society to recover pay for services rendered for the society without any *express* contract for compensation, it is error to exclude testimony offered by the defense tending to negative any custom on the part of the corporation to pay its trustees for services rendered by them; and it is also error to permit the plaintiff to show the *individual* recognition by the trustees of plaintiff's right to such compensation.

4. Upon defendant's theory that the services of plaintiff were gratuitous, and that there was nothing in the facts or circumstances from which a contract for payment could be implied, its 11th, 12th, and 13th requests (see opinion) should have been given, their substance not being covered by the general charge.

Error to Wayne. (Jennison, J.) Argued February 10, 1886. Decided April 8, 1886.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*F. A. Baker* and *H. F. Brownson*, for appellant:

The case should have been taken from the jury. Plaint-

iff's services were performed by him as a member of the committee appointed to confer with the bishop, and as one of the active trustees of the corporation; and there is no evidence tending to show that either party expected or intended that he should receive pay: *St. Jude's Church v. Van Denberg*, 31 Mich. 287.

It is well settled that a board of directors or trustees cannot contract with one of their own number: *People v. Overyssel*, 11 Mich. 222; *F. & P. M. R. R. Co. v. Dewey*, 14 Id. 477; *R. R. Co. v. Kelly*, 77 Ill. 426.

*Alfred Russell*, for plaintiff:

A member of a board of a corporation may render other services to the corporation, and receive pay, even when a charter provides that the directors shall not be entitled to any pay for *official* services: *Chandler v. Monmouth Bank*, 1 Green (N. J. L.) 255.

The law does not deprive a corporation of the services of those who, in many cases, may alone possess the skill requisite to a successful management of its business, and have an interest in its prosperity: *Gardner v. Butler*, 30 N. J. Eq. (Stewart), 702, 721, near bottom.

The testimony sufficiently established an express contract, but the case may well be rested on the implied contract. "Indeed, by the whole course of decisions in this country, corporations in their contracts are placed upon the same footing with natural persons, open to the same implications," etc., etc.: Angell & Ames on Corporations, § 240; *Baptist Church v. Mulford*, 8 N. J. L. 182; *North Whitehall v. S. Whitehall*, 3 Serg. and R. (Penn.) 117; *Chestnut Hill Turnpike Co. v. Rutter*, 4 Id. 16; *Dunn v. St. Andrew's Church*, 14 Johns. (N. Y.) 118; *Danforth v. Schoharie Turnpike*, 12 Id. 227; *Bank of Columbia v. Patterson*, 7 Cranch, 299; *Waring v. Catawba Co.*, 2 Bay (S. C.) 109; *Hayden v. Middlesex Turnpike*, 10 Mass. 397; *Poultney v. Wells*, 1 Aik. (Vt.) 180; *Proctor v. Webber*, 1 D. Chip. (Vt.) 371, 456, note; *Chesapeake, etc., Canal Co. v Knapp*, 9 Pet. 541; *Hunt v. San Francisco*, 11 Cal. 250; *Cape Sable Co.'s Case*, 3 Bland (Md.) 606; and this doctrine is unquestioned in this State; *McCracken v. Halsey Fire Engine Co.*, 57 Mich. 361.

SHERWOOD, J. This suit was commenced in the circuit court for the county of Wayne on the twenty-first day of December, 1881.

The action is assumpsit on all the common counts, and the plaintiff's bill of particulars is made up of the following items:

To services rendered by plaintiff from 1872 to 1876, for said defendant, in obtaining a release of lease made by the trustees of said church to Frederick Rese, in 1834, of the tract of land known as the square on which St. Anne's Church stands; also of land known as the "Monier Lot," on the southeast corner of Randolph and Congress streets, - $5,000

To services rendered from 1872 to 1876, in settlement of matters in dispute between said corporation and Casper H. Borgess, - - - - 5,000

To services in procuring release of lease made thirteenth of March, 1859, by Peter Paul Lefevre to the Sisters of Charity, and also release of lease made twelfth October, 1865, by said Peter Paul Lefevre to said Sisters of Charity, - - - 5,000

The defendant pleaded the general issue, with notice of the statute of limitations.

Trial was had at the circuit in the month of October, 1885, resulting in a verdict and judgment for the plaintiff for the sum of $3,000. The case is brought to this Court by writ of error for review on bill of exceptions.

The plaintiff is an attorney at law in Detroit, where he has resided many years.

The defendant is a religious corporation, organized under the act of 1807, adopted April 3 of that year by the governor and judges: 4 Supp. Terr. Laws, 16; 1 Terr. Laws, 209. St. Anne's Church is the oldest church organization in the State, and the society's first house of worship was erected by Cadillac in 1701: Farmer's History of Detroit, 527. The congregation organized as a corporation under the statute the twelfth day of April, 1807, as stated.

By the articles of incorporation the management of the affairs of the corporation was vested in the curate of the parish and four trustees, and it is therein stated that "the curate and two of the four trustees, or three of the trustees with his consent, shall suffice to act and pass all proper decrees." The trustees, "according to immemorial custom,"

were to be "elected for four years by the assembly of the former trustees," etc. These articles are still in force, and, together with the act of 1807, constitute the organic law of the corporation.

The church organization, it will be observed, is made up of three elements: (1) Members of the congregation who have never been trustees; (2) former trustees, who are known as old or ancient trustees, being those who have once been one of the four trustees; and (3) the four trustees constituting the board for the time being, and known as active trustees. Whenever a term expires, or a vacancy occurs, the ancient and active trustees together elect a successor. Edward V. Cicotte was first elected a trustee in 1837 or 1838, and has been one of the ancient trustees ever since, and has acted as such, more or less.

A meeting of the " old and new trustees " was held sometime on or between the twenty-fifth day of December, 1870, and the thirty-first day of December, 1871, at which the first action involved in this case was taken. The exact date of this meeting is not known.

Cicotte claimed, in making out his case before the jury, that he was employed by the curate, the president of the corporation, to do three things: (1) To procure from the bishop, who had a lease for 999 years, dated in 1834, the title to lands of the church, worth at least $200,000; (2) to cancel a balance of about $28,000, due on an account of $103,000 to the bishop; 3, to cancel a lease held by the Sisters of Charity of property owned by the corporation; that he was engaged several years in this business, and finally accomplished it; that all the corporators were aware of the employment and the performance of the services, and that he expected pay; that he associated Prof. Wells, a counselor at law, with himself, and the curate paid him; and that the curate also paid Cicotte's expenses, and said that he deserved something, but never would pay, out of pique, which arose from the fact that Cicotte was opposed to selling the land.

The record shows that the defendant is not only an ancient trustee, but that on the thirty-first day of December, 1871,

he was elected for the term of four years, and at the expiration of that term he was re-elected for another term of four years.

During the entire existence of this church, until about the year 1875, it held the title to its church property. It, however, executed a lease of the same to the bishop of Detroit on the first day of May, 1834, for the period of 999 years.

In consequence of difference between the church and bishop of Detroit, it was thought desirable, upon some suitable terms, to make a surrender of the lease, and place the title to the property in the bishop, and at the same time adjust an indebtedness of the church to the bishop, claimed by him to exist. The initiative in the matter was taken some time during the year 1871, at a meeting of the trustees, in which the following appears in its recorded proceedings :

"A committee was appointed by said meeting to meet a committee appointed by the Right Reverend Bishop Borgess, to confer with each other in respect to matters in difference existing between the corporation of St. Anne's and a lease given by said corporation to the Right Reverend Bishop Frederick Rese, May 1, 1834. The persons appointed in behalf of said corporation of St. Anne's were Alex. Chapoton, Sr., Antoine Morass, and Edward V. Cicotte ; the Right Reverend Bishop Borgess having previously invited by written communication, addressed to the trustees of said corporation, soliciting them to appoint a committee for the abovementioned purpose." .

This record is signed by E. V. Cicotte and thirteen other persons, including Reverend Father Anciaux, the curate.

This appears to be all the record-showing there is in the case relating to any request or employment of the defendant on the part of the church or its trustees to perform the services for which the judgment in this case has been rendered.

The defendant's counsel claim that the plaintiff, at the time the alleged service was performed, was an active trustee, and that whatever he did was done in that capacity, in furtherance of a religious and charitable object, and gratuitous; that as trustee, and a member of an appointed com-

mittee, he had no right to employ himself to perform the service for which he claims; that neither had the curate any authority to make a contract with the plaintiff for the service for which he claims; that there was no contract, either express or implied, between the parties; and that the relations of the parties were such as to repel any presumption to that effect.

The circuit judge was asked to instruct the jury to return a verdict for the defendant. We do not think the case one proper for this instruction.

It is well settled that corporations, whatever may be their character, are placed upon the same footing in regard to their contracts, and the implications upon which they may be based, as natural persons: *McCracken v. Halsey Fire Engine Co.*, 57 Mich. 361; Ang. Corp. § 240; *Cape Sable Co.'s Case*, 3 Bland, 606; *Hunt v. San Francisco*, 11 Cal. 250; *Chesapeake & Ohio Canal Co. v. Knapp*, 9 Pet. 541; *Poultney v. Wells*, 1 Aiken, 180; *Chestnut Hill Turnpike Co. v. Rutter*, 4 Serg. & R. 16; *Dunn v. St. Andrew's Church*, 14 Johns. 118; *Baptist Church v. Mulford*, 8 N. J. Law, 182; *Hayden v. Middlesex Turnpike*, 10 Mass. 397.

The defendant was an attorney at law, and I think he might have been employed in his professional capacity to do the work he has charged for in his bill of particulars. He testifies that he declined to act as one of the trustees in the matter in which he claims to have performed the service for which he seeks payment. Certainly, the services were not such as he was obliged to perform, either as committee-man or trustee, nor were they against the interest of the church for which they were performed. What was done through his agency seems not to be complained of by St. Anne's Church, and there were undoubtedly special reasons why he was earnestly requested by the pastor to act as committee-man, or in some capacity to aid in bringing about an accommodation of the difficulties between the corporation and the bishop. There is no intimation of fraud or collusive conduct on the part of the plaintiff, nor that his services were not valuable. The case in which the services were rendered

does not show a sale of the property to one of the trustees, nor to a member of the committee; neither does it show the plaintiff acting in any save in a fiduciary or trust capacity in the services he performed.

While he was not acting as a trustee in what he did for which he claims pay, he acted for them; and if there was a number sufficient to act without his participation in the matter, there was no legal objection to their making a special contract with him to perform the service. They certainly had the power so to do under their charter and articles of association: *People v. Overyssel*, 11 Mich. 222, opinion by Justice CAMPBELL; *Mayor of Niles v. Muzzy*, 33 Mich. 61; *German American Seminary v. Kiefer*, 43 Mich. 105; *Chandler v. Monmouth Bank*, 13 N. J. Law, 255; *Gardner v. Butler*, 30 N. J. Eq. 702, 721.

If the services claimed could be recovered for under a special contract, there can be no good reason given, I apprehend, why an implied liability may not arise for the performance of such service, unless there is something in the circumstances of the case which necessarily repels or excludes such implication. The simple fact that services are rendered does not raise a liability on the part of the person for whom they are rendered, even though done at his request, if the circumstances are such as to rebut the inference that compensation is to be made. When services are performed from kindly motives, and with charitable intentions, the law will not imply a promise to compensate for them: *Woods v. Ayres*, 39 Mich. 345; *Coe v. Wager*, 42 Mich. 49; *Van Buren v. Reformed Church*, 62 Barb. 495; *Lee v. Lee*, 6 Gill & J. 316; *Palmer v. Haverhill*, 98 Mass. 487; *Watson v. Stever*, 25 Mich. 386.

The evidence in this case, though strongly tending to show gratuitous services on the part of plaintiff, was not conclusive upon the subject. It was proper to be submitted to the jury, and their finding is against the defendant, and must stand unless error has been committed by the court in its rulings or in the charge.

The case should have been submitted fully upon the theory of both sides.

The evidence is clear that there was no express contract for compensation to the plaintiff, consequently the plaintiff was necessarily compelled to rely upon the facts and circumstances entirely to make out this branch of his case, and anything which would tend to contradict, explain,, or in any way weaken or modify, the plaintiff's testimony, should have been permitted to go to the jury on the part of the defense. The witness Lafferty, we think, should have been allowed to answer the following question:

" Will you inform us whether. or not it has been customary for the corporation to pay trustees for services rendered by them ?"

It was claimed by defendant's counsel that it was in that capacity these services were rendered, and the custom would certainly have a tendency to show how the parties understood the question of compensation when the work was requested and being done.   It was error to exclude it.

A similar question was propounded to witness Eli Barkume, viz:

" Will you state whether or not it has been customary for the trustees to receive compensation for such services ?"

The answer to this question was erroneously excluded for the same reason.   It was but a fair presumption that Mr. Cicotte rendered his services upon the customary conditions of the other trustees in like cases.   All the other questions of like import should have been permitted to be answered. The conversations the plaintiff had with Father Anciaux and with Eli Barkume about the sales of property to Bagley, and to the Bagley estate, were irrelevant and hearsay, and improperly admitted.   The individual recognition of the trustees to the right of plaintiff to compensation was incompetent, and should have been excluded.   Their actions and doings and sayings in their official capacity would have been quite proper.   The statements of the curate were also inadmissible relating to that subject, upon the same ground.

Upon the defendant's theory that the services of plaintiff were gratuitous, and that there was nothing in the facts or circumstances from which a contract for pay could be implied, we think the following requests should have been given :

" 11. If the performance of the work was voluntary, and both sides supposed the service was given spontaneously, from a desire to promote a cause the plaintiff had at heart, no agreement to pay can be implied.

12. If the work was done under circumstances justifying the belief that no charge was intended, there is no liability to pay.

13. If the relations of the parties, the nature of the service, and all the pertinent facts, show that the plaintiff was not working for money, and that the church did not understand that pay was to be exacted, none can be demanded."

We do not think the substance of these is found in the general charge of the court.

The question, under the testimony presented in the record, as to the power of the curate to make any contract for the purpose it is claimed he did, is exceedingly doubtful, and the evidence, while it is incomplete as to the ratification of what the plaintiff did in the business intrusted to the committee, is even less satisfactory as to any understanding as to paying for the services rendered, either express or implied.

The further consideration of this subject is unnecessary, as the errors mentioned render a reversal necessary, and a new trial will be granted.

The other Justices concurred.