## JOHN D. VERMEULE *vs.* JOSEPH HOVER.

### York.  Opinion February 18, 1915.

*Assignment.   Conveyances.   Corporation.   Directors.   Equity.   Foreclosure.*
*Mortgages.   Quitclaim Deed.   Real Action.   R. S., Chap. 84,*
*Sec. 17.   Title.*

1.  The general rule in *European and North American Railway* v. *Poor*, 59 Maine, 277, that directors cannot legitimately acquire an interest adverse to the corporation of which they are directors, and that if they purchase any claim against the company it is in trust for the company, while recognized in principle is too broad a rule in its application to the case at bar.

2.  A director in a corporation is not debarred by reason of his office from entering into a contract with the corporation but the contract is subject to the principle that when he appears on both sides of it, it will be closely scrutinized in equity and set aside unless made in that entire good faith which the law demands of this species of fiduciary.

3.  Subject to the same principle directors are not debarred from purchasing the property of the corporation at judicial or other public sales, nor at private sale, if the same is paid for out of personal funds of the purchasing director.

4.  The president of a corporation who executes a warranty deed of lands of the corporation acknowledging it to be his own free act and deed, as well as that of the corporation, does not render himself personally liable in an action for breach of covenant.

5.  A demand for accounting under the provisions of R. S., Chap. 92, Sec. 15, should call for an accounting of an entirety, not a portion of the debt due on the mortgage.

6.  A deed by a mortgagee out of possession, unaccompanied by a transfer or assignment of the mortgage indebtedness, conveys no title.

On report.   Judgment for the plaintiff.

This is a real action to recover two pieces of real estate situate in York County.   The defendant, in the court below, was permitted to plead in equity, under the provisions of R. S., Chap. 84, Sec. 17, in addition to the general issue.   To said pleadings, the plaintiff filed his reply.   At the conclusion of the evidence, the cause was reported to the Law Court for the determination of the rights of the parties, upon so much of the evidence as is legally admissible.

The case is stated in the opinion.
*Charles E. Littlefield, and George C. Yeaton,* for plaintiff.
*Leroy Haley,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HANSON, PHILBROOK, JJ.

PHILBROOK, J.   This is a real action wherein the plaintiff demands of the defendant two pieces of real estate in York County.   On motion allowed by the presiding Justice in the court below, the defendant was permitted to plead in equity under the provisions of R. S., Chap. 84, Sec. 17.

The plaintiff claims record title to the real estate under the following conveyances.   As to one piece he says that Cornelius C. Vermeule, then the owner, gave a mortgage deed thereof to Armenious H. Bowden on April 3, 1890, that this mortgage was assigned to the plaintiff October 9, 1900, and by him foreclosed by due process of law.   As to the other piece he says that Cornelius C. Vermeule, then the owner, gave a mortgage deed thereof to John Parsons and Phoebe A. Parsons on August 10, 1892, that this mortgage was assigned to the plaintiff August 11, 1899, and by him foreclosed by due process of law.   The defendant, while admitting the existence of this record title, claims that the same should not be allowed to prevail.

In 1892 a corporation was organized by the name of the York Cliffs Improvement Company.   The plaintiff was president and one of the directors of the company.   On November 2, 1892, by quitclaim deed the said Cornelius C. Vermeule, also a member of the corporation, conveyed to it several parcels of land, among them being the two lots in controversy.   In that conveyance no reference was made to the Bowden and Parsons mortgages, which were still valid incumbrances, but knowledge of their existence by the parties then interested is shown by the fact that, on the same second day of November, the directors of the corporation, at a meeting held in New York City, spread upon their records the fact that part of the "other valuable considerations" paid for the lands granted the corporation by Cornelius C. Vermeule was the payment to the grantor of "a mortgage for two thousand four hundred dollars given by C. C. Vermeule to A. H. Bowden," and also payment of "a mortgage for three thousand three hundred dollars given by C. C. Vermeule to John Parsons."

As time went on the corporation became heavily indebted to the plaintiff, John D. Vermeule, to Cornelius C. Vermeule, and to Joseph N. Kinney, all three of whom were members of the corporation. On November 24, 1897, an agreement in writing was made between these three creditors and the corporation, in which the creditors agreed to accept in exchange for such indebtedness "all lands owned by said company" and then followed a description of the lands. The agreement also contained the following provision; "And in case no other provision is made and agreed upon by the parties hereto, for paying off said debts of the York Cliffs Improvement Company on or before June 1st, 1898, then it is hereby agreed that on that day these aforesaid lands will be conveyed by a good and marketable title to John D. Vermeule, Cornelius C. Vermeule and Joseph N. Kinney by the said York Cliffs Improvement Company in proportion to their respective claims in the aforesaid indebtedness of the York Cliffs Improvement Company." The agreement, from which these quotations are made, was quite long and contained other provisions but we have referred to those which are inportant at this point in our discussion. Apparently the debts of the corporation were not otherwise paid for on August 27, 1898, deeds were executed by the Improvement Company granting its lands, in common and undivided, nine-twentieths to the plaintiff, John D. Vermeule, seven-twentieths to the defendant Joseph Hover, and four-twentieths to Charles D. Kinney. Mr Joseph N. Kinney, creditor as aforesaid, directed the deed of his share in the lands to be given to his son, Charles D. Kinney, as he, the father, was expecting to go abroad for an extended visit. The share of Cornelius C. Vermeule was deeded to the defendant. This was done by direction of Cornelius, who stated in his testimony that the defendant was acting as attorney for his (Cornelius') wife, who had advanced the money from her separate estate. Cornelius also stated that Mr. Hover "holds the title as attorney for my wife." At that time Cornelius receipted for the indebtedness of the corporation to him. It was not claimed that Mr. Hover, at the time the deed was given to him, was a creditor of the corporation, a member of the corporation, an officer of the corporation, or had any claim against it, or that anything was paid to it by him as consideration for the conveyance. As a result of petition for partition in 1899 the lands in controversy were among those set off to the defendant. Hence the defendant's claim of title.

It should be noted that at the close of the testimony there is a stipulation that when the plaintiff verifies the description, in case he found his declaration covered more than he is entitled to recover under the foreclosed mortgages, he may amend his declaration accordingly.

As already observed, the defendant says that the record title of the plaintiff, in view of the conditions just recited, should not be allowed to prevail. He admits that the Bowden and Parsons mortgages, through foreclosure of which plaintiff obtained title, would be valid liens, if in the hands of innocent third parties, for value, but contends that in view of the situation of the several parties relative to the corporation and to the agreement above referred to, those mortgages should not be considered valid liens in favor of this plaintiff. He contends, since the plaintiff, the defendant, and Kinney received their lands from the corporation, all having knowledge as he says, that the corporation had assumed or promised payment of the debts secured by those mortgages, that it was the intention of the grantees that each should take his respective share free from any encumbrance so far as any party to the agreement was concerned.

The agreement on which defendant relies according to its terms, relates to debts due from the corporation to the other three parties, "amounting to $97,660, more or less" and which, the defendant claims, are to be extinguished by the transfer of the lands of the corporation to its three creditors, "in proportion to their respective claims in the aforesaid indebtedness of the York Cliffs Improvement Company," but it does not clearly appear that the "aforesaid indebtedness" included the debts secured by the Parsons and Bowden mortgages although the corporation had promised to pay them, as urged by defendant. These mortgage debts at the date of the agreement, November 24, 1898, were still due the original mortgagees, since the assignment of the Parsons mortgage was dated August 11, 1899, and that of the Bowden mortgage was October 9, 1900. Clearly then this agreement could not wipe out the Parsons and Bowden debts secured by these mortgages.

This brings us to a specific contention of fact made by the defendant, namely, that the money used by the plaintiff in procuring the assignment of at least one of the mortgages, was advanced to the plaintiff by the corporation, and was the money of the corporation, but from an examination of all the testimony we do not think this

contention can prevail.   On the other hand we are persuaded that
the corporation was financially unable to redeem the mortgages and
that the plaintiff paid for their assignment out of his own funds.
Accordingly it will be seen that the wiping out of claims against the
corporation referred to in the agreement by the transfer of its lands
to these creditors, was a transaction in no way affecting the mort-
gage debts as they then existed, or the payment of them, and their
assignment to the plaintiff was a separate and distinct transaction.

But the defendant contends, since the plaintiff was president and
director of the corporation that he could not lawfully acquire these
claims against the corporation, and if he did so he really acquired them
for the benefit of the corporation, and that their acquisition under
these circumstances was an extinguishment of them and of the mort-
gages given to secure them.   The defendant does not allege in his
pleadings, and consequently does not attempt to prove, any fraudu-
lent act of the plaintiff in acquiring these mortgages.   This lead us
to the question, may an officer of a corporation, in the absence of
fraud, lawfully acquire and enforce a claim against such corporation.
In *European and North American Railway Company* v. *Poor,* 59
Maine, 277, the court said "The general rule is, that directors cannot
legitimately acquire an interest adverse to the corporation, and that
if they purchase any claim against the company it is in trust for the
company."   The case from which this quotation is made involved
the right of a director to share with a building contractor in the
profits realized from the construction of a railroad for a company in
which the sharer was such director.   That right was challenged by
the corporation in its own behalf and for its own benefit.   We agree
with the rule as actually applied to that case but think the statement
of it, as shown by the above quotation, was too broad.   We hold
strictly to well established doctrines concerning the fiduciary relation-
ship existing toward a corporation on the part of those who become its
officers, but it is one of those well established doctrines that a director
is not debarred, by reason of his office, from entering into a contract
with the corporation, but the contract is subject to the principle that
when he appears on both sides of it, it will be closely scrutinized in
equity, and set aside unless made in that entire good faith which the
law demands of this species of fiduciary.   3 *Thompson's Corporations,*
Sec. 4059; *Smith* v. *Skeary,* 47 Conn., 47; *German-American Seminary*
v. *Kiefer,* 43 Mich., 105; *Pneumatic Gas Co.* v. *Berry,* 113 U. S., 322;
*Leavenworth* v. *Chicago, etc., R. Co.,* 134 U. S., 688.

We regard it also as a well established doctrine that the principle which upholds contracts between a corporation and its directors or officers, when fairly made, allows them, under like conditions to purchase property from the corporation. 3 *Thompson's Corporations*, Sec. 4070, and cases there cited.

Another step leads us to the doctrine, equally well established, that the principle which allows directors to deal with their corporation and which makes contracts between them and it good in law, though subject to be avoided in equity upon any appearance of unfairness, has an analogy in the principle that directors are not disabled, by the fiduciary relation which they occupy toward the company, from purchasing its property at judicial or other public sales. "Such purchases are not wholly void, but they operate to pass the legal title to the purchasing director, so that he will hold it as against a purchaser at execution sale under a subsequent judgment against the corporation, in a proceeding at law, such as a writ of entry to obtain possession." 3 *Thompson's Corporations*, Sec. 4071. *Salt Marsh* v. *Spaulding*, 147 Mass., 224; s. c., 17 N. E. Rep. 316. The last cited case contains the following language peculiarly applicable to the case at bar. "The demandants further contend that, as the directors are trustees for the stockholders, even if the mortgage was valid, a purchase, by one of the directors, of the property belonging to the corporation (the cestui que trust) is prima facie a purchase for the trust. If this proposition is correct, we cannot see that it would aid the demandants in maintaining this action. The title clearly passed to the purchaser even if a director; and if the foreclosure sale could be avoided or the purchaser declared to hold the property subject to a trust, this could only be done by the corporation or by its stockholders." In this last cited case we also note the following language: "A director of a corporation is not prohibited from lending it moneys when they are needed for its benefit, and when the transaction is open, and otherwise free from blame; nor is his subsequent purchase of its property, at a fair public sale by a trustee under a deed of trust, executed to secure a payment of the debt, invalid." Citing *Holt* v. *Bennett*, 146 Mass., 437; *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S., 587.

We pause to emphasize the fact that the party here contending against the plaintiff is not the corporation, nor an officer, or stockholder, in behalf of the corporation. The assignment of the two mortgages in question, under the testimony paid for by the plaintiff's

own funds, the lack of averment or proof of fraud, the open and legal manner of recording the assignment, and the open and legal manner of foreclosure, satisfy us that the defense cannot prevail upon this branch of the case.

But he further contends, since the plaintiff was president of the corporation when it gave the warranty deed to the defendant, and acknowledged it to be his own free act and deed as well as the free act and deed of the corporation, that the plaintiff was bound by the covenants of deed. The defendant does not call our attention to any decision in support of this position. On the contrary it was held in *Whitford* v. *Laidler,* 94 N. Y., 145, s. c., 46 Am. Rep. 131, that in the absence of a personal promise or covenant, one signing a contract, who therein represents himself to be the agent of a disclosed and known principal, and who assumes to contract for such principal only, is not held personally liable upon the covenants contained in such contract. That the sealing and delivery of a written instrument by M. as president and in behalf of the corporation did not render M. liable in an action for breach of covenant is held in *Hopkins* v. *Mehaffy,* 11 S. & R. 126, cited in *Abbey* v. *Chase,* 6 Cush., 54.

The defendant further contends that the plaintiff was an equitable part owner, with the defendant of the demanded premises, and hence equitably a joint mortgagor in the mortgages running to Bowden and to Parsons for the purchase price of the lands in controversy; that payment of the mortgage by one joint mortgagor would operate as a discharge of the mortgage. The defendant overlooks the fact that he was unknown to these transactions until long after the purchase price mortgages were given, and long after the agreement, herein before referred to was given, that the deed under which he claims is from the Improvement Company which made him and the plaintiff owners jointly and in common with Kinney, of the disputed premises, under a legal title, so that he and the plaintiff never stood in the relation of equitable joint owners or equitable joint mortgagors, whatever might be claimed as to the plaintiff and Cornelius C. Vermeule, whose share in the premises seem to have been deeded to the defendant Hover.

This view also disposes of the claims made by the defendant that the plaintiff was jointly indebted with the defendant to the extent of the mortgage and that acquiring title of a joint obligation was payment of the debt.

We are unable to see how the contention of the defendant as to demand for accounting can effect the issue in this case for at best his only demand was for "a true account of the sum due on said mortgages that belong to the said Hover to pay," which is not a demand in accordance with the provisions of R. S., Sec. 15, Chap. 92, which provides for demand for "a true account of the sum due on the mortgage," an entirety and not a portion.

It does not seem necessary to discuss the questions of estoppel or laches raised upon the one side and the other, for these in the light of all the facts, do not appear to affect the main question sufficiently to change the result. Having regard to the stipulation for verification of description the entry must be,

*Judgment for plaintiff.*