[No. 453. Decided August 12, 1892.]

A. S. GROSS, *Respondent*, v. EDWARD P. CADWELL, *Appellant.*

ASSUMPSIT—WHEN LIES—GRATUITOUS SERVICES.

Where the evidence in an action for services rendered shows that plaintiff and defendant were in the habit of mutually receiving and rendering favors with no present thought of making pecuniary charges therefor, no recovery can be had, even if the services rendered by plaintiff were more valuable than those received.

*Appeal from Superior Court, Kittitas County.*

*Parsons & Corell*, for appellant.

*Bausman, Kelleher & Emory*, for respondent.

The opinion of the court was delivered by

ANDERS, C. J. — Although appellant claims that the court below committed several reversible errors during the course of the trial of this cause, the argument of counsel was principally directed to the point that the court erred in overruling his motion for a new trial on the ground that the verdict was not sustained by the evidence. While we would not be disposed to disturb the verdict of the jury in any case where there is a substantial conflict in the testimony upon a material issue, a careful examination of the evidence in this case leads us to the conclusion that this judgment ought to be reversed.

It appears from the record, that during the years 1889 and 1890, the plaintiff was engaged in real estate, insurance and general brokerage business, in the city of Ellensburgh, and that, during the same time, the defendant was an attorney at law, and was the owner of valuable buildings, which he leased for various purposes. Up to about October, 1890, these parties were upon terms of intimate friendship with each other, but, at that time, their friendly relations seem to have been somewhat abruptly terminated. During the period of time involved in this controversy Cadwell insured his property in companies represented by Gross, and the former testifies that in consideration of placing his insurance with Gross the latter performed the services for which he claims to recover in this action, and that it was expressly understood on his part, that no pecuniary consideration was to be paid, and no charge was to be made therefor. On the other hand, Gross claims that he was specially employed by Cadwell to collect rents, look after tenants, procure stay bonds in actions in court, and to assist in settling difficulties with contractors and others, and that there was no understanding that he was not to make any charge for his services, and that a great portion of his time was employed in these matters. It further appears from

the evidence, that Cadwell was employed by Gross, as an attorney, in at least one case in the superior court, which services the former testified were worth two hundred dollars, but for which he made no charge for the reason that he wished thus to offset in a measure his obligations to Gross for services rendered by him. It also appears that after appellant's buildings were completed his rent roll amounted to between $1,600 and $2,000 a month, but that respondent only collected between $4,000 and $6,000, all of which he disbursed according to the direction of appellant. That could not certainly have required a very great length of time, or any very material portion of the period of nearly two years during which respondent claims to have been engaged in the service of appellant. From these collections he deducted no commission and claimed no compensation at the time. Indeed, according to the testimony of the respondent himself, he never made any charge against the appellant in any account rendered or in any book kept by him, for any part of the alleged services for which he now seeks to recover, and, further, that he never would have charged anything for his services if certain business arrangements which he and appellant had under contemplation in the summer of 1890 had been consummated. He admits that he never kept any books in which he recorded his transactions with appellant, and while he could not, or did not, state the value of any item of service, he estimated the value of the whole at $1,000.

Again, it is a significant fact that after all these various and diversified services had been rendered, and all business relations between the parties had been broken off, respondent presented a claim against appellant for the sum of only $37.50, and that was a balance for insurance, and is not included in the amount now claimed. Not a word was said at that time about any claim for services, nor was such a claim ever made or suggested to appellant until the

commencement of this action. And the only reason given by respondent for his failure to make any claim or demand for past services is that he would have been sufficiently compensated if the contemplated arrangement between him and Cadwell had been carried out. But when we remember that, according to his own evidence, he had been employed for more than a year before the subject of permanent business arrangements was talked of, the reason assigned is hardly satisfactory. The fact that no books were kept, and no charges made, and nothing ever said to appellant about compensation, is cogent evidence to our minds that the services rendered, whatever they were, and whenever rendered, were intended to be gratuitous, although they may have been requested by appellant. As late as June 12, 1890, respondent rendered a statement of account between him and appellant, which showed a balance in favor of appellant of twenty dollars, and which was paid by respondent's check. In this statement the total charge against Cadwell, all of which was for premiums on insurance, was $892.55, and the total credits amounted to $922.55. Of this latter sum, $602.05 was money paid by appellant, from time to time, and the balance was money received from tenants and placed to his credit. It would hardly seem probable that respondent would have paid over to appellant money which he had collected if, at the time, he thought he had a valid claim against appellant for services rendered. Notwithstanding the statement of respondent that he expected to be paid in some way, and that appellant promised to see him paid "sooner or later," we think that his testimony alone, taken altogether, plainly discloses the fact that what he did for appellant, outside of insuring his property, was done merely as an accommodation, for which no pecuniary compensation was then anticipated or expected. It was the duty of respondent, as appellant's agent, to keep an accurate account of each and every trans-

43—4 WASH.

action on behalf of his principal. This he confesses he failed to do, and, notwithstanding he now claims to recover a large sum of money on account of his agency, he is unable to designate even the date of any particular transaction. He could not tell, when on the witness stand in his own behalf, the exact date at which his services began or when they ended. This could not have been the effect of ignorance, or inability to keep accounts, for respondent shows that he had been for many years engaged in active business.

In brief, we think the evidence in this case, as a whole, conclusively shows that these parties were in the habit of mutually receiving and rendering favors, with no present thought of making pecuniary charges therefor, and in such cases no recovery can be had by either party. *Potter v. Carpenter,* 76 N. Y. 157. See also *Dunlap v. Allen,* 90 Ill. 108; *Jared v. Vanvleet,* 1ᴢ Jll. App. 334. And it is of no moment that the services rendered by respondent may have been more valuable than those received, for that is entirely immaterial under the circumstances. Appellant can make no charge against respondent for professional services, and, on the other hand, it would violate every sense of justice to compel him to pay for services for which the respondent made no charge, and which he never would have thought of making an account of if his relations with appellant had not changed. Cadwell may have done wrong in refusing to pay the balance due for insurance, but that is no reason why he should be compelled to pay for every service theretofore rendered by Gross, and of which he had hitherto made no note.

The judgment of the court below is reversed, and the cause remanded for further proceedings.

HOYT, DUNBAR, SCOTT, and STILES, JJ., concur.