SULLIVAN v. LATIMER.

SAME v. SAME.

1. THE STATUTE OF LIMITATIONS is well pleaded to so much of an account presented against the estate of their testator by his executors for services as managing agents and for medical bill, as bore date more than six years prior to testator's death.

2. LEGACY—DEBT—SATISFACTION.—The legacies of this will were not intended to be in satisfaction of debts due by the testator to such legatees, for the reason, *inter alia,* that the debts were contracted after the execution of the will.

3. TRANSACTIONS WITH DECEASED.—A physician, who presents a claim for medical attention to his testator, may testify as to the physical condition of testator within the period of the services rendered, and the proportion of a physician's time which had been required in looking after the patient's health, as these were not "transactions" with the deceased, which term, as used in section 400 of the Code, imports mutuality. And the claimant could also testify to conversations heard by him between his wife and the deceased.

4. FINDINGS OF FACT—MEDICAL BILL.—Concurrent findings of fact by master and Circuit Judge, from a mass of testimony, allowing very large claims presented by two nephews against their deceased uncle's estate, for services as business agents and physician, not disturbed. MR. CHIEF JUSTICE McIVER *dissenting* as to the medical bill, because not supported by any legal proof.

5. BOARD—RELATIONS—GRATUITY.—But a concurrent finding, allowing a nephew a large board bill against his deceased uncle's estate, reversed, the circumstances indicating that the board was intended as a gratuity, and there being no evidence to show any contract or recognition by deceased of a liability.

6. REFERENCE BACK.—Cause referred back for inquiry and determination on a point not considered below, and for a fuller statement of the executor's accounts.

7. JUDGMENTS—SATISFACTION—AGENCY—DEATH.—A judgment creditor directed his attorney to mark two judgments satisfied, one of which was so marked by the attorney during the lifetime of the creditor, and the other after his death. *Held*, that the one was satisfied, and that the other could not be asserted by persons claiming under deceased; but that the right of the attorney to act for his client terminated at his client's death.

Before WITHERSPOON, J., Greenville, July, 1891.

These were two actions against J. P. Latimer and J. H. Latimer, executors of Hewlett Sullivan, and others, one by Charles M. Sullivan and the other by Thomas J. Sullivan and others. The first action was commenced October 6, 1887. The Circuit decree was as follows:

Hewlett Sullivan died testate May 30, 1889, leaving a considerable real and personal estate estimated to exceed one hundred thousand dollars in value. The testator, Hewlett Sullivan, was a bachelor of some eighty years of age at the time of his death. The plaintiffs and defendants in the above actions are legatees and devisees under the will of Hewlett Sullivan; the defendants, Joseph P. Latimer and John H. Latimer, have duly qualified as executors of the will of Hewlett Sullivan. The object of the above action is to require the defendants, Dr. Joseph P. Latimer and John H. Latimer, to account as executors of Hewlett Sullivan, and to have the estate of Hewlett Sullivan administered by a receiver under the direction of the court.

The two actions were consolidated, and were heard together. The master being disqualified, it was referred to L. K. Clyde as special master to take the accounts of the executor; and the defendants, Dr. Joseph P. Latimer and John H. Latimer, were required to establish by competent testimony before said special master their respective claims against the estate of Hewlett Sullivan for services rendered the said Hewlett Sullivan during his lifetime. The testimony taken by the special master is voluminous, covering more than 300 pages of written matter. No effort seems to have been made before the special master to surcharge or falsify the executors' return. The special master filed his report March 24th, 1891, in which he finds that the following amounts are due by the estate of Hewlett Sullivan to

the defendants, Dr. Joseph P. Latimer and John H. Latimer, respectively:

To Dr. Joseph P. Latimer: $500 per year for six years, for services rendered Hewlett Sullivan in attending to his business; $1,500 per year for six years, for services rendered Hewlett Sullivan as a physician; $500 a year for four years, for boarding and nursing Hewlett Sullivan—aggregating $14,000.

To John H. Latimer: $350 per year for six years, for services rendered Hewlett Sullivan—aggregating $2,100.

The special master held that the statute of limitations would bar any claim for services rendered prior to the six years immediately preceding the death of Hewlett Sullivan. The special master concluded, and reports that the defendants, Dr. Joseph P. Latimer and John H. Latimer, are not liable to account to the estate of Hewlett Sullivan for certain judgments in said report referred to. The special master states in his report that the executors have acted under the advice of counsel in the management of the estate, and in view of the size and character of the estate, have made reasonable progress in the settlement of the estate. Plaintiffs and defendants have excepted to the report of the special master upon numerous grounds, and the counsel were heard upon said report and the exceptions to said report. The important points raised by the exceptions have been ably argued by counsel.

The special master permitted Joseph P. Latimer and John H. Latimer to introduce their books of account, merely to show that charges had been made for the services alleged to have been rendered. This is one of the grounds of plaintiffs' exceptions, and during the argument the counsel for Dr. Joseph P. Latimer and John H. Latimer, without objection, withdrew the books as evidence in the case. I do not think the special master erred, as alleged in the exceptions, either on admitting or excluding evidence, under section 400 of the Code. I will not undertake to refer to the numerous exceptions seriatim, or attempt to cite any portion of the voluminous testimony. It seems to me that the evidence is sufficient to sustain the special master in his finding as matter of fact, and I concur with the special master in his conclusions as matter of law.

From this decree Charles M. Sullivan and John D. Sullivan appealed upon twenty-two grounds, raising the points considered by this court.

*Messrs. H. J. Haynsworth, R. C. Watts,* and *T. S. Moorman,* for appellants.

*Messrs. J. A. Mooney, Wells & Orr, W. H. Irvine,* and *Benet, McCullough & Parker,* contra.

April 19, 1893.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    These cases were brought for a settlement of the estate of Hewlett Sullivan, deceased, and were heard together.    The record is enormous, consisting of nearly three hundred pages of printed matter, with an addition of half as many of printed argument.    The various matters involved are in some confusion, and in order to have a clear view of the points to be decided, it will be necessary to give a condensed outline of the principal facts.

Hewlett Sullivan was a bachelor, and lived to the great age of more than eighty years.    Having energy and good business capacity, he accumulated a considerable fortune, which, as was supposed at the time of his death, amounted to more than a hundred thousand dollars.    His nearest relations were four nephews, viz: Joseph P. Latimer and John H. Latimer, sons of a sister, and Charles M. Sullivan and John D. Sullivan, sons of a deceased brother, and these are the principal litigants over his property.    On March 20, 1880, he executed his will, naming all four of his aforesaid nephews as executors.    Becoming feeble with age and disease, in the winter of 1883, he went to live with his favorite nephew, Dr. Joseph P. Latimer, where he remained, with increasing infirmities, until he died on May 30, 1887.    While he was living in the family of Dr. Latimer, on March 15, 1887, he made a codicil to his will, revoking the appointment of the Sullivan brothers as executors of his will, and leaving the Latimers as his sole executors.    They immediately after his death proved the will, qualified as executors, and took possession of the entire estate.    By his will, the testator gave devises and specific legacies to several other per-

sons, and then (1) To the wife and children of Dr. Joseph P. Latimer he devised the Arnold Mill tract of land, where the family resided; (2) To John H. Latimer for life, with limitation over to his heirs, he devised the "Mason Stone" tract of land and $3,000, on condition that he should assist in taking care of his mother; (3) To John D. Sullivan $4,000; (4) And to Charles M. Sullivan $2,000; and then directed that the residuum of his estate, consisting principally of six or eight separate tracts of land, should be equally divided between his four nephews aforesaid.

The appellants, Charles M. and John D. Sullivan, instituted these proceedings against the executors, charging mal-administration—that the executors were collecting the estate, but paying neither debts nor legacies—refusing to charge themselves with certain judgments, which the testator, at the time of his death, held against each of them; but, on the contrary, in addition to many free gifts made to them by the testator in his lifetime and the provisions of his will so liberal to them, they, the said executors, were now raising charges against his estate, for alleged services, medical attention, and nursing, during the latter years of his life, so enormous as to threaten to swallow up a large part of the estate, praying for an account, injunction, receiver, &c.

Several unsuccessful efforts had been made to obtain an account and settlement; but in 1889, his honor, Judge Hudson, made an order appointing L. K. Clyde, Esq., as special master, with directions: *first,* to take the testimony and state the accounts of the executors to the date of the reference, with a view to ascertain how the executors were discharging their duties; and especially to take the testimony as to the indebtedness of each of the said executors to the said deceased, if any there be, &c. *And second,* "the said special master is charged to require the said executors, and each of them, to make proof, and by competent testimony to establish before him their respective claims against the said Hewlett Sullivan, the deceased testator;" and "by striking a balance, ascertain, and report to this court, how much, if any, the deceased at the time of his death was indebted to each of the executors," &c.

The special master held many references and took an enormous mass of testimony, most of which was in reference to the individual claims of the executors against the estate of their testator, and made a report of which the following are substantially the conclusions reached:

*First.* As to the individual claims of the executors. "The special master will not undertake to discuss the evidence in detail—it is too voluminous—but will content himself by saying, that he has most carefully and laboriously considered and analyzed the same, and finds as follows:

"I. That for many years of his life, and especially during the last ten or fifteen years preceding his death, valuable services were rendered to Hewlett Sullivan in the conduct and management of his business affairs by Dr. J. P. Latimer.

"II. That for and during said period, more or less frequently, Hewlett Sullivan received at his hands skillful and valuable medical treatment.

"III. That during the last years of his life he was boarded by said Dr. J. P. Latimer in his family, and during his spells of sickness was nursed and cared for by him and his family.

"IV. That during the last seven or eight years of the life of Hewlett Sullivan, like valuable services were rendered him in attending to and looking after his business by John H. Latimer.

"V. That these services were rendered by both Dr. J. P. Latimer and John H. Latimer at the request of Hewlett Sullivan, and with the mutual expectation and understanding that they were to be compensated therefor. In the judgment of the special master, these conclusions are clearly sustained by the evidence.

"The only two questions remaining are: (1) How were they to be compensated—by legacy, or were they to be paid as other creditors? And (2) if the claims are legal demands against the estate, what amounts have these parties shown themselves entitled to recover? * * * The special master is forced to the conclusion, that the mutual understanding was that these claims were not to be paid by legacy or devise, but were intended to be paid as the claims of other creditors. He sustains

the plea of the statute of limitations, and holds that the claims, prior to May 30, 1881 (six years), are barred, and the question of compensation under the will, executed in 1880, can not arise.

"What, then, is the value of their services respectively, as established by the proof? Without attempting to discuss the evidence, the special master will content himself with merely stating the conclusions reached: *First.* That the services of Dr. J. P. Latimer rendered to Hewlett Sullivan, in attending to his business for the six years last preceding his death, are worth five hundred dollars per year for said period—$3,000. *Second.* That his services as physician to Hewlett Sullivan for said period of six years are worth fifteen hundred dollars per year—$9,000. *Third.* That the board and nursing Hewlett Sullivan by Dr. Latimer for the last four years of his life are worth five hundred dollars a year for each year of said service—$2,000. *Fourth.* That the services of John H. Latimer rendered to Hewlett Sullivan for and during the six years last preceding his death are worth three hundred and fifty dollars per year—$2,100."

And he found as matters of law: "1st. That the claims of the executors are not paid or satisfied by benefits received under the will of the testator, by presumption or operation of law. 2d. That their claims are subsisting legal demands against the estate of Hewlett Sullivan. 3d. That the portions of their claims which arose or were contracted prior to May 30th, 1881, are barred by the statute of limitations.

*As to the accounting of Executors.*—The special master proceeds: "It is contended that the executors should account for certain judgments held by their testator against them, as monies in their hands. It appears from the evidence that Hewlett Sullivan bought a judgment held by one Greer against Dr. Latimer, and gave it to him; that there was no written assignment or transfer of the judgment, but that he placed the judgment, or something that represented or was intended to represent it, in the hands of Dr. Latimer, stating that he gave the judgment to him. The evidence also shows that he had two judgments against John H. Latimer and others; that he instructed Mr.

Mooney, who was his attorney, to mark these judgments satisfied as to Lohn H. Latimer; that they were so marked, the one in his lifetime, the other after his death; that the failure to mark this judgment satisfied before his death was due to oversight on the part of Mr. Mooney. Under the doctrine laid down in *Miller* v. *Newell*, 20 S. C., 124, the special master thinks it clear that a judgment may be assigned or transferred by parol; that symbolical delivery is sufficient. It was Mr. Mooney's duty, under the instructions, to mark this judgment satisfied; the authority received was sufficient. What ought to have been done, equity will consider as done. The special master is of opinion, and so holds, that the executors can not be required to account for these judgments." He really stated no account of the estate "down to the reference" in the usual form, charging interest on debit balances in the hands of the executors, &c.; but simply stated the gross amount *received* and disbursed by the executors respectively.

To this report of the special master the appellants (plaintiffs) filed forty-eight exceptions. Upon these exceptions the cause was heard by his honor, Judge Witherspoon, who said: "It seems to me that the evidence is sufficient to sustain the special master in his findings of matter of fact, and I concur with the special master in his conclusions as matter of law." He overruled all the exceptions, and made the report the judgment of the court. From this decree the plaintiffs appeal to this court upon twenty-two exceptions, which are all printed in the record.

We agree with the special master and the Circuit Judge, that the statute of limitations applies to all the charges of John H. Latimer and J. P. Latimer, for services in the general business of the testator, and as to the very large professional bill of Dr. Latimer, leaving only the items of date within the six years immediately preceding the death of the testator, that is to say, back to 1881. We further concur, that the services rendered *after* that time cannot be considered as satisfied by the provisions of the testator's will, for the obvious reason, among others, that the services were *after* the execution of the will (1880), and it could not have been the intention that the will should operate as a dis-

charge of liabilities not in existence when it was executed. "Satisfaction may be defined in equity to be the donation of a thing, with the intention, expressed or implied, that it is to be an extinguishment of some existing right or claim of the donee. It usually arises as a matter of presumption, where a man, being under an obligation to do an act (as to pay money), does that by will which is capable of being considered as a performance or satisfaction, &c.   *   *   *   The donation is held to be a satisfaction, unless that conclusion is repelled by the nature of the gift, the terms of the will, or the attendant circumstances." Story Equity, § 1100; *Owens* v. *Simpson*, 5 Rich. Eq., 415. We must not, however; be understood as holding that no subsequent donations, made after the execution of a will, can be held to be in satisfaction of liabilities also incurred after the execution of the will, and before such new donations are made.

Now, as to the services in the general business of the testator, and the medical attention alleged to have been given by Dr. Latimer, within the period unaffected by the statute of limitations, the special master took a very large amount of testimony, and, as he states himself, "gave much care and thought to the investigation of the evidence touching this branch of the case."

Some of the exceptions complain that it was error, under section 400 of the Code, to admit the testimony of Dr. Latimer as to Hewlett Sullivan's physical condition, and the proportion of a physician's time required in looking after his health. It seems to us that this testimony was from the observation of Dr. Latimer himself, as to what he saw, which could not be said to be a "transaction" which implies mutuality—something done by both in concert, in which both take some part. *Rookhart* v. *Dean*, 21 S. C., 597; *Brown* v. *Moore*, 26 *Id.*, 160. Nor can we say that it was error to admit the testimony of Dr. Latimer as to a conversation between his wife and Hewlett Sullivan, in which he took no part, not being a transaction or communication between the witness and the person deceased. *Hughey* v. *Eichelberger*, 11 S. C., 49, in which the Chief Justice said: "The provision of the Code does not apply where the 'transaction' was not between the witness and the deceased, but between the deceased and some other person."

The special master reported the following as his findings of fact: I. That the services of Dr. J. P. Latimer, rendered in the general business of Hewlett Sullivan for six years, were worth $500 per year, aggregating $3,000. That his services as physician to Hewlett Sullivan were worth $1,500 per year (six years)—$9,000. That the services of John H. Latimer in the general business of Hewlett Sullivan are worth $350 per year for six years—$2,100.

These findings may seem large, but they were made by the tribunal appointed for that purpose; they were upon simple questions of fact, and the Circuit Judge concurred in them; so that, according to the well-known rule of this court, they will not be disturbed, unless they are without any evidence to sustain them or are against the manifest weight of the evidence. A mere glance through the volume of testimony will disclose the fact that it would be quite impossible for this court to review it, with any hope of arriving at a different result. The claims as above stated, therefore, must be accepted as established. See *Callum* v. *Rice*, 35 S. C., 551.

But as to the item in the charges of Dr. Latimer for $2,000, in round numbers, for the board and nursing of the testator for four years before his death, in addition to his large medical bill and for general services, disposed of above, we think a different principle must apply. Whether the estate of the testator, after his death, is liable for this claim, is a mixed question of law and fact, and within the province of this court to review it. Exception 12 complains that all testimony should have been excluded which was offered in support of the claim of Dr. Latimer for board, attention, &c., of the testator, which was not specified in the original bill of particulars rendered, &c. It may be that this charge was not itemized, being, in fact, a mere supplement to the larger charge for medical services. But, without going into that, it seems to us that this item of charge can not be maintained. "When a relative has been permitted to live in a family as a friend, without an intention manifested to charge him for his board, he can not afterwards be called upon to pay for it. What was originally a gratuity can not afterwards be

converted into a debt." *Schnell* v. *Schroder*, Bail. Eq., 338.
"The presumption in such case being against a contract, the
law requires, when a promise is alleged to have been made,
that the proof be direct, clear and positive—especially so when
the claim is against the estate of an intestate (or testate) rela-
tive—so as to leave no doubt as to the understanding and
intention of the parties. It must be shown that the deceased
intended to and did assume a legal obligation to the plaintiff
of such character that it could be legally enforced against him,"
&c. 17 Am. & Eng. Enc. L., 337, and notes. See *James* v.
*O'Driscoll*, 2 Bay, 101; *Hunter* v. *Hunter*, 3 Strob., 321; *Ex parte
Aycock*, 34 S. C., 255; *Trammell* v. *Salmon*, 2 Bailey, 308;
*Weir* v. *Weir*, 3 B. Mun., 645.

The testator, after an active life, was becoming infirm, and,
probably tired of living alone, went to live with the family of
Dr. Latimer, his favorite nephew, for whom he had done more,
was doing, and continued to do more, than for any other of
his relatives. Upon the occasion of his entering the family,
we hear nothing of an express contract for board or nursing.
Doubtless, the family gave to him the welcome due to a near
relative and valued friend, to whom, as the rich man of the
family, they were under many obligations. It is not to be
imagined that, at that time, any of the parties thought for a
moment of charging him for board and nursing, as if he were a
mere stranger. There is, at all events, no proof of such con-
tract, that was not the understanding of the parties—certainly
such was not the understanding of Mr. Sullivan himself, who,
it would seem from his conduct, lived and died in the belief
that the board now set up as a debt against his estate was
accorded to him while living *in the spirit of the most unselfish
generosity.* His whole subsequent course of life was only con-
sistent with this view. He had money at hand, but never
offered to pay anything on a contract for board. As was
natural, he felt the moral obligation to requite such generosity,
and to pay *kindness with kindness,* and accordingly in 1886,
while he was living in the family, he put himself to some
trouble to purchase the Greer judgment against Dr. Latimer
for something over $1,000, with interest, and made Dr. Lati-

mer a present of it.  About the same time, he made other valuable donations to the wife and children of Dr. Latimer. He probably wished thereby to recognize what he conceived to be generosity on their part, and it is hardly to be supposed that he would have thus acted, if he had known that an account was running against him for board, attention, &c., which was to be set up as a debt against his estate after his death.  See *Callum* v. *Rice,* 35 S. C., 555.  The decree below, allowing the item for board and nursing in the account of Dr. Latimer for $2,000, is reversed.

The seventh exception alleges error, "in not holding that Hewlett Sullivan was surety to John H. Latimer, C. A. Parkins, and P. D. Huff, upon the note sued on in the case of the National Bank of Greenville *v.* John H. Latimer *et al.*, and allowing John H. Latimer credit for two payments made by him upon said judgment," &c.  We have not been able to find that the special master considered the question whether Hewlett Sullivan was a principal or a mere surety in the bank case, and, therefore, it is recommitted, in order to ascertain the fact as to who was the principal and who the surety on the note, and to state the account of the executors accordingly.

The third, fourth, and fifth exceptions raise substantially the same points, and charge error in the special master and Circuit Judge, in not holding John H. Latimer liable for certain judgments recovered by Hewlett Sullivan in his lifetime against P. D. Huff & Co., of which (firm) partnership John H. Latimer was a member.  It seems that some short time before his death, Hewlett Sullivan instructed his attorney, Mr. Mooney, to mark the judgments satisfied as to John H. Latimer; that they were so marked, one in the lifetime and the other after the death of Hewlett Sullivan, the omission to mark the latter "satisfied" before his death being due to an oversight on the part of Mr. Mooney.  It was contended that a judgment can only be assigned by writing; that even in equity symbolical delivery will not pass title unless for value, and that the agency of Mr. Mooney having ceased with the death of Hewlett Sullivan, his act afterwards was nugatory and void.  "An assign-

ment of a judgment need not be under seal, nor even in writing, to be mutually binding upon the parties to the assignment; but the intent to assign the judgment must be clearly shown." 12 Am. & Eng. Euc. L., 149, and notes; *Miller* v. *Newell,* 20 S. C., 124. It would seem that the owner of a judgment may do what he pleases with it—give it away by parol or in writing, or mark it "satisfied," if no wrong is done thereby to his creditors. What he may do himself, he can do through another. There is, then, no doubt as to the judgment marked "satisfied" before the death of Hewlett Sullivan. It seems that the other, also, would have been marked "satisfied" but for an accident. There is no doubt that the authority of Mr. Mooney, as agent, died with his principal. But both the master and Circuit Judge have found as a fact, that. under some arrangement with John H. Latimer, Hewlett Sullivan had ordered both judgments marked "satisfied;" and we do not clearly see how the personal representatives (the executors) of Hewlett Sullivan can be required to account for these judgments, in the face of the intention and express order of their testator. Upon this point we feel constrained to concur with the master and Circuit Judge.

Judge Hudson's order of reference required the special master "to state the accounts of the executors up to the time of the reference," &c. This account was very imperfectly taken, merely stating the amounts in gross "received" and "disbursed" by each executor, without stating the account in a formal manner, and without charging interest on annual debit balances in the hands of the executors respectively. A large part of what is called "disbursements" of each of the executor, consists of money retained by them in payment of their claims contested in this case. The account, as stated, is set aside, and the case must go back to the Circuit Court, to have it regularly and formally stated.

The judgment of this court is, that the judgment of the Circuit Court be modified, as herein indicated, and that the case be remanded to the Circuit Court, in order that the account of the executors may be formally stated, and for such other proceedings as may be necessary and proper to carry out the conclusions herein announced.

MR. JUSTICE POPE.   I concur in the opinion announced by
Mr. Justice McGowan.   The force and effect given to the con-
current findings of fact by the master and Circuit Judge, under
the decisions of our courts, seem to demand that such findings
of fact shall control this court in relation to the same, except
in those cases where there is no testimony to sustain them, or
such findings are contrary to the manifest weight of the testi-
mony.   It is quite true that the medical bills allowed in this
case seem to be unusually large.   The last days of Hewlett
Sullivan were only made peaceful by these nephews and their
families.   He had neither wife nor child.   As shown by the
records of the courts since the war of 1865, he had been almost
continuously in litigation, some of which was with near rela-
tions bearing his own name.   Quite old, buffeted by many
reverses, he seems to have turned to Dr. Latimer and his fam-
ily for care and attention during the last years of his life.   So
deep a hold did Dr. Latimer as a physician have upon the con-
fidence of Hewlett Sullivan, that the latter could not tolerate
his absence from him.   To answer such demands, the physician
in question had to abandon all other calls.   These unusual,
long protracted, and extraordinary demands upon Dr. Latimer
seem to have controlled the master and the Circuit Judge.   I
cannot, from these stand-points, say that the finding is against
the weight of testimony, or without any testimony to support it.

I think, however, care should be taken to emphasize the dis-
approval by this court of any power in an attorney at law to
interfere with a judgment, obtained by him for a client during
his lifetime, after the client's death, such, for instance, as mark-
ing a judgment satisfied, when no money is paid or provided
to be paid in full payment of such judgment, even though in
the lifetime of the client such direction may have been given
by the client to the attorney.   It is the settled law of this
State, that death revokes a power of attorney; and, also, that
an attorney is restricted to the prosecution of the action and
the receipt of the amount of the judgment of his client.   *Mayor
v. Blease*, 4 S. C.. 13, and authorities there cited.   But as I do
not understand the judgment of the other members of this court
to be based upon this phase of the question (I mean, the action

of the attorney in marking the judgment satisfied after Sullivan's death), it is unnecessary to pursue the subject further, and I concur, as before said, in the conclusions announced by Mr. Justice McGowan.

MR. CHIEF JUSTICE McIVER.    While I concur in all the other conclusions reached by Mr. Justice McGowan, I cannot agree with him in affirming so much of the judgment below as allowed to Dr. Joseph P. Latimer his claim for medical services rendered the testator.    It does not seem to me that there was any such evidence to establish this claim as the law requires. Ordinarily a claim of this kind is established by the introduction of the books of the physician, showing the specific charges made at the time the services were rendered (*Lance* v. *McKenzie*, 2 Bail., 449), though I presume that where there is a special contract that the physician shall be paid so much per year, proof of such contract would authorize a recovery.    In this case there was no evidence of any such contract, and hence the claim could properly be proved by the book entries of the physician, which must be specific and not general.    *Hughes* v. *Hampton*, 2 Tr. Con. R., 745, where the charge which was rejected as too general was: "13 dollars for medicine and attendance on one of the general's daughters in curing the whooping cough."    This case is cited with approval in *Lance* v. *McKenzie*, *supra*, and as the court there says, "has been invariably acted upon ever since."    The slightest examination of the medical account presented in this case will show that much the larger part of the charges in the account originally presented are in much more objectionable shape than the charge rejected in the case cited.    I do not mean to say that a charge for medical services can *only* be proved by book entries, for there may be cases in which the specific services charged for may be proved by other evidence—as, for example, where a witness can testify that he knows that the specific services charged for were rendered.    But in this case there was no such evidence offered, and none could well be, except that of Dr. Latimer himself, and that would have been incompetent, under section 400 of the Code.

In addition to this, as I understand it, while the books of Dr. Latimer were originally offered in evidence, yet, as the special master says, they were so "inartistically kept, and, in the main, are obnoxious to the rules laid down as governing the entries in such books, and serve little or no purpose here, save as showing an intention of (on?) the part of actors to charge for their services," they were not and could not be received as evidence to establish this claim. But, more than this, the Circuit Judge says in his decree, that "during the argument the counsel for Dr. Joseph P. Latimer and John H. Latimer, without objection, withdrew the books as evidence in the case." So that, as the case comes before us, these books cannot be regarded in evidence at all, and hence cannot even serve the purpose of showing an intention at the time, on the part of Dr. Latimer, to make any charge for his professional services. It seems to me, therefore, that there was no legal evidence sufficient to sustain the charge for professional services, and hence that the claim should be rejected.

Judgment modified.