## VICTOR CARLSON v. JOHN A. KRANTZ.[1]

July 22, 1927.

No. 25,834.

**New trial necessary in interests of justice.**

    1. Plaintiff's claim is that he was installed on a farm of defendant under a promise that he might remain there for life and that defendant would support him, furnishing him food and clothing and money for incidental expenses. If there was a contract, it has been breached by defendant, but the alleged agreement, viewed as a contract, is of so unusual a nature and so characterized by motives of kindliness and charity rather than of contract that, there having been a substantial verdict for plaintiff, a new trial is considered necessary in the interests of justice.

[1]Reported in 214 N. W. 928.

**Law will not imply a contract when promises are made solely for charitable purposes.**

2. Even though services are rendered or acts done on request, there is no liability where the circumstances repel the inference that compensation was intended. So when services are performed, acts done, or promises made solely for charitable purposes and without the intention of assuming contractual obligation, the law will not imply such obligation.

New Trial, 29 Cyc. p. 820 n. 35.
Work and Labor, 40 Cyc. p. 2812 n. 36; p. 2813 n. 38.

Action in the district court for St. Louis county to recover the value of services performed. There was a verdict for the plaintiff, and defendant appealed from an order, Kenny, J., denying his alternative motion for judgment or a new trial. Reversed.

*Nelson & Cedergren,* for appellant.
*Jenswold, Jenswold & Dahle,* for respondent.

STONE, J.

Action on contract wherein, after verdict for plaintiff, defendant appeals from an order denying his motion for judgment notwithstanding or a new trial.

Defendant is a minister of the gospel and in 1911, in which year the alleged contract was made, was the pastor of a church at Duluth. Plaintiff is single and until 1911 had been very much of a wayfaring man, much of his life having been spent before the mast. Being a slave to the liquor habit but having the desire to reform, he sought the aid of defendant, who had long been his dependable friend and spiritual adviser. The effort was not in vain, and no question is made of the initial disinterestedness of the efforts of defendant on behalf of plaintiff, which had characterized the acquaintance between the two for some time prior to the making of the alleged contract.

Defendant owns a fractional quarter section of wilderness land on the shores of Grand Lake in St. Louis county. Its potentialities as a summer residence or agricultural property are suggested

but not clear. Defendant acquired it before 1911 and has owned it ever since. Except as hereinafter stated, it has never been improved and neither he nor his family has made personal use of it. If it was acquired as a long-time investment, the purpose has been achieved so far as duration is concerned.

Plaintiff's story is that in 1911, at his own solicitation, defendant took him out to this land, which we shall designate as the farm, and first installed him in the home of a neighbor, where defendant paid his board. At plaintiff's solicitation, defendant soon built a substantial log cabin on the farm, admittedly for the use of plaintiff and to afford him a habitation where he could keep aloof from the temptations of the old life from which he was attempting escape. That purpose is not only clear but also conceded to have been the dominating purpose of the transaction, whether it was contract or mere charity. After the house, a substantial barn and root cellar were added, a well sunk and some fencing done. The cost of all the improvements was borne by defendant except that some of the common labor was done by plaintiff. Plaintiff continued his residence on the land, with unimportant interruptions, until 1924. Then, if there was a contract, it was breached by defendant, who required plaintiff to vacate or at least refused longer to maintain him on the farm. During all this period defendant had no income from the place. Neither did he make any use of it save that on a few occasions he and one or two of the younger members of his family were there for short periods. Defendant bought and paid for a horse which plaintiff used on the premises. Likewise, he bought a cow for plaintiff's use. Defendant furnished food supplies, clothing and other necessities required by plaintiff, including money for incidental expenses.

On his part, plaintiff remained on the place and did some work there, but in extent and value it lacks much of being commensurate either with the duration of his stay or the amount defendant has expended on him. He has done not to exceed 15 acres of clearing, and not to exceed ten acres have ever been cropped. The rest plaintiff claims to have "parked." Some fruit trees have been planted.

Further detail is unnecessary, but it is safe to generalize to the effect that, considering that plaintiff was on the place for 13 years, the physical improvement resulting from his efforts has been relatively insignificant, a situation explained probably by physical disability and advancing years.

The contract claimed for plaintiff is that, in consideration of his agreement to go onto the place and live there as a sort of caretaker, there being very little attempt in the record to state what real obligation he assumed, the defendant promised to maintain him on the farm, furnishing sufficient money for food, clothing and incidental expenses as long as he should live. In other words, if the contract was made as claimed by plaintiff, he thereby became a life tenant on the farm without obligation to pay rent, even to the extent of keeping up taxes, and without any obligation to do a single thing beneficial for his lessor, defendant, except that it is vaguely suggested that he assumed the duties of a caretaker and guard against the hazards of trespass and fire.

Defendant, on his part, denies the contract, but admits his interest in plaintiff, his efforts to reform him, and his installation of the man on the farm in the hope that he would thereby have an opportunity for an outdoor life aloof from former associations and temptations and the opportunity for reform which plaintiff solicited him to furnish.

Due to circumstances which are unfortunate rather than discrediting, plaintiff's testimony is very unsatisfactory, so much so that the learned trial court doubted its sufficiency to "warrant a finding of a contract expressed in words." It was thought, however, that the evidence was sufficient to take the case to the jury "on the question of contract implied from the offer of defendant to furnish Carlson with support for life and its acceptance by his going on the land and working as he did."

It is one thing to say that defendant offered to support his repentant and needy parishioner for life and that plaintiff accepted the offer, but it is entirely another thing to say that either of them intended to bind himself contractually. To us, it seems pre-

posterous that defendant *contracted* with plaintiff to make the latter a life tenant on a farm which plainly he might want to sell at any time. In other words, it is easy to understand the relationship between plaintiff and defendant as one of accommodation and charity, but it passes understanding when it is considered as one of contractual obligation of the kind here sought to be imposed. That consideration has become so strong with us that we feel that the interests of justice require a new trial.

The case was submitted to the jury upon the theory of a contract expressed by both words and conduct. The jury was permitted to consider it a case of services rendered at the request of defendant without an agreement as to their value, but with the mutual understanding that they were to be paid for. Upon that issue, it should be observed that the fact that services are rendered, even on request, does not create liability where the circumstances repel the inference that compensation was intended. So when services are performed or acts done, even on request, merely from kind or charitable motives, the law will not imply a promise to pay for them. Cicotte v. St. Anne's Church, 60 Mich. 552, 27 N. W. 682; Covel v. Turner, 74 Mich. 408, 41 N. W. 1091; Gross v. Cadwell, 4 Wash. 670, 30 P. 1052; rule applied to board "intended as a gratuity," Sullivan v. Latimer, 38 S. C. 158, 17 S. E. 701, and to use and occupation of real estate in Collyer v. Collyer, 113 N. Y. 442, 21 N. E. 114. It follows that, when the use of property is accorded one on a promise of maintenance made solely through charitable or kind motives, no contract results. Even though in such a case the words used have a contractual sound, yet if clearly the parties do not intend to assume contractual obligation, no contract results. Again in such a case, it is easy for an interested party, in retrospect, to give to a mere expression of intention a promissory and contractual effect. That may well have taken place here. If in this case defendant, out of anxiety to save plaintiff from his old habits, had expressed the intention of caring for him for life, it would have been easy for a man of much better education than that of plaintiff, out of self-interest, to convert that

expression into a promise.   Such an issue is ordinarily one for the trier of fact, but if this case is resubmitted to a jury, it might be well to explain not only that agreements entered into solely for kindly and charitable as distinguished from contractual purposes cannot result in legal obligation, but also that care should be taken not to attach promissory and contractual effect to what was at the time merely an expression of intention concerning future action.

Order reversed.

DIBELL, J. (dissenting).

I dissent.   I agree that the evidence sustains a recovery and that it is not particularly strong for the plaintiff.   If I were trying the facts, having before me only the printed evidence and not the witnesses, I might reach a different result; and if I found for the plaintiff I might make the damages less.   But the facts were for the jury.   If the case is tried again it will be tried about as it was tried before and upon about the same evidence.   There is not detectable an atmosphere at the trial unfavorable to the defendant. The trial was the usual fair trial on disputed facts.   The result is the composite judgment of 12 jurors.   The trial judge is satisfied. In a better position many times over than are we to determine whether there should be a discretionary new trial, he has decided that there should not be.   True, the new trial will not be embarrassed by a determination of the law of the case on this appeal, for the evidence is held sufficient to go to the jury, and the plaintiff can again present the same facts to another jury for another finding.   The record contains 600 pages of printed testimony.   The cost of the reversal and the delay and expense of a new trial put upon him a heavy burden.   He is now 75 years of age, and practical reasons suggest that he ought not to bear it unless it is clear that a discretionary new trial should have been granted.

WILSON, C. J.

I concur in the dissent.