MARY C. WILSON, Plaintiff Below, Appellant, v. EQUITABLE SECU-
RITY TRUST COMPANY, a corporation of the State of Dela-
ware, Administrator C. T. A. of the Estate of Rosie R.
Wilson, Defendant Below, Appellee.

(*March* 1, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*David P. Buckson* and *George R. Wright* for appellant,
plaintiff below.

*John O. Snyder* for appellee, defendant below.

Supreme Court of the State of Delaware, No. 60, 1959.

Bramhall, J.:

The only question which it is necessary to decide in this appeal is whether or not there was substantial evidence to warrant the trial judge in rendering judgment for defendant.

The trial judge, after reserving decision on two motions by defendant for a directed verdict, in his memorandum opinion rejected these motions. In finding for defendant the trial judge reached the following conclusions: (1) That plaintiff during the lifetime of decedent never indicated that she expected to be paid for her services to decedent and in fact was never paid anything for her services during the lifetime of decedent; (2) That the services were rendered gratuitously by reason "of her personal nearness and family relationship to decedent".

Plaintiff was the daughter-in-law of decedent. She and her husband had lived with decedent and decedent's husband at 133 South Street, Smyrna, Delaware, since the year 1921. In October, 1949, plaintiff's husband, the son of decedent and decedent's husband, died, leaving a life insurance policy in the amount of $10,000, in which plaintiff and decedent were named as beneficiaries. Plaintiff continued to live in the home of decedent and her husband until 1950, at which time she established a home of her own at 113 South Street, Smyrna, just four doors away. Plaintiff continued to visit decedent's home about every other day. Decedent's husband died in 1954. A few weeks prior to his death decedent fell and broke her hip and was thereafter confined, first in the hospital and later at her home, until January 23, 1957, when she died. Decedent for many years prior to her accident employed a colored woman, who went to decedent's home once or twice a week to do the cleaning, the laundry and help with the cooking. Upon decedent's return from the hospital, a practical nurse was employed. Later it was necessary to hire an additional woman to assist in the nursing duties. Both nurses lived in the home of decedent. These three persons took care of the home, did the cooking and performed all the nursing services until decedent's death.

Plaintiff, although employed at the time, arranged for providing food for the household, made out checks for the payment of bills from decedent's bank account and performed other miscellaneous acts on behalf of decedent. Plaintiff and decedent had a strong attachment for each other. Plaintiff had a key to decedent's home. After decedent broke her hip, plaintiff went to decedent's home practically every night after she came home from work. On holidays, such as Thanksgiving and Christmas, plaintiff prepared dinner for decedent and others in the household.

Just a few days after decedent's death on January 23, 1957, plaintiff approached one of the heirs at law of decedent's estate and persuaded him to sign a statement consenting to the payment of $5,000 from the estate of decedent to reimburse plaintiff for the amount which decedent had received under the life insurance policy of plaintiff's husband, plaintiff contending that this sum rightfully belonged to her.

In the late spring, or perhaps in June, of 1957, in a conversation with the Trust Officer of the Equitable Trust Company, executor of decedent's estate, plaintiff stated that the estate owed her $5,000, representing the amount received by decedent from the insurance policy of plaintiff's late husband. She informed the Trust Officer that it had been her husband's intention that the part paid to decedent was to be paid only in the event that the latter was in need of funds, but that, although decedent was not in need of funds, the Government had paid to decedent one-half of the proceeds of the life insurance policy anyway. When the Trust Officer informed plaintiff that the proceeds of the insurance policy had been paid to the beneficiaries designated in the policy and that plaintiff had no right to or interest in that part of the payment made to decedent, plaintiff then stated that she was entitled to the same sum of money because she "had been good" to decedent.

Plaintiff did not at any time while decedent was living present a bill for payment of her services. There is no evidence

that she was ever paid any sum whatsoever by decedent for her services.

The Court entered judgment for defendant based upon its finding that plaintiff during the lifetime of decedent never indicated that she expected to be paid, and was in fact never paid anything for her services, and that it was clear from the evidence that the services rendered by plaintiff to decedent were rendered gratuitously. Plaintiff appeals.

The question which we must decide is: Was there substantial evidence to sustain the findings of the trial judge?

Where one person performs personal labor for another which is knowingly and voluntarily accepted without condition, without any express promise to pay for the same, a promise is ordinarily implied that the person benefiting thereby will pay to the person performing the labor the reasonable value of his services. *Lodge v. Fraim,* 5 *Penn.* 352, 63 *A.* 233. As between near relations, the law does not imply any such promise. *State, to Use of Stockley v. Connoway,* 2 *Houst.* 206; *Joseph v. Johnson,* 7 *Penn.* 468, 82 *A.* 30. In the absence of clear proof to the contrary, a presumption that the services rendered by one taken into the family were gratuitous is binding. *Jones v. Tucker,* 3 *Boyce* 422, 84 *A.* 4, 1012.

Plaintiff contends that she is entitled to the benefit of a presumption that there was an implied promise on the part of decedent to pay the reasonable value of her services.

Defendant admits the general principle of law asserted by plaintiff, but contends that this presumption is rebutted by the marriage relationship existing between the parties, the nearness of plaintiff and decedent to each other and the deep attachment which each had for the other. Defendant further contends that the evidence shows that there was never any intention on the part of plaintiff to collect for her services or on the part of decedent to pay therefor.

█ We do not reach the questions as to the applicability of a presumption in favor of plaintiff or a presumption in favor of defendant. If we should accept plaintiff's contention that such presumption existed in favor of plaintiff, she still cannot recover because there is substantial evidence to sustain the finding of the trial judge that there never was any intention on the part of plaintiff that decedent or her estate should pay plaintiff for her services or on the part of decedent that plaintiff should be paid. See *Zearing v. Walters,* 125 *Ind. App.* 202, 122 *N. E.* 2d 625. Even if decedent had requested the services of plaintiff, decedent's estate would still not be liable because the circumstances existing in this case repel the inference that any compensation for such services was ever intended. *Carlson v. Krantz,* 172 *Minn.* 242, 214 *N. W.* 928, 54 *A. L. R.* 545. Assuming that the services were rendered by plaintiff in the hope that she would be rewarded by decedent in the absence of any express or implied promise to pay, this would not sustain an action against the executor of decedent's estate for such services. *Kennard v. Whitson,* 1 *Houst.* 36.

The fact that there was a relationship by marriage between plaintiff and decedent; the fact that there was a deep affection existing between them; the fact that plaintiff never made any demand during the lifetime of decedent for payment of her services and was not in fact paid anything thereon; the fact that she persuaded an heir at law of decedent to sign a consent for her to receive the return of the $5,000 paid to decedent on the life insurance policy of plaintiff's husband; the fact that in her conversation with the Trust Officer of the executor of decedent's estate, she originally demanded payment for the sum of $5,000 which she alleged to be due her from the insurance policy, and when she was advised that she could not make such a claim, she announced for the first time that she would then make a claim for services rendered by her to decedent; the fact that decedent up until the time of her death employed three women to look after her home and nurse her; all fully sustain

the finding of the trial judge that there was never any intention on the part of plaintiff to make a claim for her services to decedent or any intention on the part of decedent to pay for such services.

We think that the evidence in this case fully sustains the finding of the trial judge and that the judgment of the Superior Court for defendant should be affirmed.