JOHN F. THOMAS, APPELLANT, V.
KEARNEY LITTLE LEAGUE BASEBALL ASSOCIATION, APPELLEE.
558 N.W.2d 842

Filed February 4, 1997.    No. A-95-1070.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Brian D. Nolan and Julie A. Moran, of Hansen, Engles & Locher, P.C., for appellee.

Hannon, Sievers, and Inbody, Judges.

Hannon, Judge.

This is the second appearance of this case in this court. See *Thomas v. Kearney Little League Baseball Assn.*, 95 NCA No. 25, case No. A-93-879 (not designated for permanent publication) (*Thomas I*). John F. Thomas is seeking compensation from the Kearney Little League Baseball Association (Little League) for services he performed for it from mid-June through July 15, 1993, when he was dismissed as the head coach of the "all-stars" team. This court reversed the trial court's order sustaining a demurrer in *Thomas I* because the petition was so framed that it stated a cause of action for quantum meruit unless judicial notice was taken of an oral concession by Thomas' attorney that Thomas was a volunteer or of the fact that Little League coaches are not paid. Since we concluded judicial notice could not be taken of either fact, we reversed the trial court's judgment of dismissal in *Thomas I*. In this appeal of the trial court's order granting the Little League's motion for summary judgment, we are now presented with evidence which establishes without genuine doubt that Thomas supplied the services without an express or implied promise of compensation. Therefore, based upon the authority and reasoning set forth below, we conclude that as a matter of law, Thomas is not entitled to recover from the Little League. We affirm.

The Little League's motion for summary judgment was submitted on the pleadings, the affidavit of Thomas, and the affidavit of the president of the Little League. The constitution and bylaws of the Little League and its operating policy and procedure were attached to Thomas' affidavit.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Elliott v. First Security Bank*, 249 Neb. 597, 544 N.W.2d 823 (1996). Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record dis-

close that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

## DISCUSSION

The facts, viewed in a light most favorable to Thomas, are: During the second week of June 1993, Thomas was selected to be coach of the Kearney senior league national all-stars team (all-stars), and he was asked to accept the position. He was told that he would coach the all-stars through all tournaments until the all-stars either won the tournaments or were eliminated. He accepted the position upon those conditions. At no time was compensation for Thomas ever discussed between Thomas and representatives of the Little League, and no compensation has ever been given to any coach of the Little League for services rendered. It was understood by all persons associated with the Little League that coaches were volunteering their time for the benefit of the children involved.

Pursuant to the agreement, Thomas coached the all-stars until July 15, 1993, when he was discharged as head coach. He alleges the Little League breached the agreement by discharging him, and he seeks to recover the fair and reasonable value of his services. Thomas alleges that he put approximately 100 hours into these efforts before being discharged and that the fair and reasonable value of these services is $1,200.

In his affidavit, Thomas alleges that he was not a volunteer, because he was asked to coach. Obviously, when the Little League uses the word "volunteer," it means that the person is performing the services without the expectation of compensation, whereas Thomas uses the word in the sense of a person doing something without being asked. We recognize that the evidence establishes that Thomas was asked to serve, but we shall use the term "volunteer" to mean someone who performs services without expecting to be paid.

Thomas argues that he is entitled to compensation for the reasonable value of the services he rendered, because he was asked to serve as the head coach of the all-stars and he did not agree that he would do so gratuitously. In our society, a great

many people are asked to render a community service, and they do so without expecting or receiving compensation for their services. If Thomas' position was correct, all such persons would be entitled to demand payment for the reasonable value of their services unless it was specifically agreed that the services were to be rendered gratuitously. Under such reasoning, a Santa Claus volunteer that was terminated before Christmas would have a cause of action against the Salvation Army. We have located no Nebraska case dealing with a belated demand for payment for services rendered for some community service organization when compensation was not originally discussed. However, it seems obvious that the youth of our state would be seriously and adversely affected if the law was as Thomas claims it to be. Under his view, the many organizations attempting to help young people could be sued by their respective volunteers for the value of the services rendered by the volunteers simply because someone in the organization asked the volunteers to serve and did not specify the services would be rendered gratuitously. We think the lack of cases on the subject is probably due to the fact that most people agreeing to render such community service would not think of suing the sponsoring organization for compensation for the rendering of such services. Not surprisingly, as discussed below, the case law we find from other jurisdictions consistently holds that there is no implied promise by a community service organization to pay for services rendered on behalf of such organization where the circumstances and conditions under which the services were rendered are inconsistent with a promise to pay for the services, even if the organization asked the volunteer to render his or her services.

■ The general rule is that when services are furnished to a party and knowingly accepted, the law implies a promise by the person knowingly accepting the services to pay the reasonable value of the services. *County of York v. Johnson*, 230 Neb. 403, 432 N.W.2d 215 (1988). Many Nebraska cases deal with the presumption of gratuity when services are rendered for closely related persons. See, e.g., *Houser v. Houser*, 178 Neb. 401, 133 N.W.2d 618 (1965). When presented with an issue requiring it, the Supreme Court has recognized a broader rule. For instance,

in *Wrede v. City of David City*, 137 Neb. 194, 198, 288 N.W. 542, 544 (1939), the court said: "An implied contract may be said to result 'where one performs for another, with the other's knowledge, a useful service of a ·character that is usually charged for . . . .' " In *School District v. Wilson*, 101 Neb. 683, 689, 164 N.W. 709, 711 (1917), the court stated:

> The law in many cases implies a contract to pay for services received, but not in cases where, as in this case, it is doubtful whether the party claiming compensation is entitled thereto from the party with whom he deals, and where the existing conditions and the conduct of the parties are entirely inconsistent with the existence of such a contract. . . . The law will not imply that which the evidence clearly shows did not exist.

We find no Nebraska cases which consider the liability of a charitable or community service organization for the services of those who serve such organizations without compensation having been originally discussed and agreed upon. General authority and cases from other jurisdictions have considered the issue, however.

■ "Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." Restatement of Restitution § 1, comment *c.* at 13 (1937).

"In the case of services, the inference of a promise to pay may be rebutted by the closeness of the relationship of the parties or by the fact that such services when rendered under like circumstances customarily are given without compensation." Restatement of Restitution § 107, comment *c.* at 450 (1937).

■ The general rule appears to be as follows:

> [I]t should be observed that the fact that services are rendered, even on request, does not create liability where the circumstances repel the inference that compensation was intended. So when services are performed or acts done, even on request, merely from kind or charitable motives, the law will not imply a promise to pay for them.

*Carlson v. Krantz*, 172 Minn. 242, 246, 214 N.W. 928, 929 (1927).

The *Carlson* court stated: "[A]greements entered into solely for kindly and charitable as distinguished from contractual purposes cannot result in legal obligation, but also that care should be taken not to attach promissory and contractual effect to what was at the time merely an expression of intention concerning future action." *Id.* at 247, 214 N.W. at 929-30. The *Carlson* court cited as authority the case of *Cicotte v. St. Anne's Church*, 60 Mich. 552, 27 N.W. 682 (1886), where an attorney sued for legal services supplied to his church, and it was held that the proof of the church's custom to pay for such services was admissible evidence.

In *St. John's Church v. Storsteen*, 77 S.D. 33, 84 N.W.2d 725 (1957), the South Dakota Supreme Court recognized the general rule that where services are furnished by one person for another which are knowingly and voluntarily accepted, without more, it is inferred that they are given and received with the expectation of being paid for. However, the South Dakota court held in that case:

> It is clear that the plaintiff church was enriched by the contribution of the items involved, but this fact alone is not sufficient to make the church liable therefor under the quasi contract concept. In addition it must also appear that it is unjust for the church to retain the benefits without payment.

*Id.* at 38, 84 N.W.2d at 728.

More recently, in *Turner v. Unification Church*, 473 F. Supp. 367, 378 (D.R.I. 1978), which was decided under Rhode Island law, the court said:

> Rhode Island appears to agree with the general rule that a party performing work must have a reasonable expectation of payment in order to assert a quantum meruit claim. . . . The general rule is that no recovery can be had, on a quantum meruit basis, for services rendered by reason of kindly, charitable, religious or humane motives.

"[T]he presumption that compensation was intended is rebutted by circumstances which negative such an intention . . . by the fact that such services when rendered under like circumstances

customarily are given without compensation . . . ." 66 Am. Jur. 2d *Restitution and Implied Contracts* § 25 at 969 (1973).

Even though services are rendered on request, a promise to pay for them is not implied where the circumstances repel an inference that compensation was intended, as where the persons are related by blood or marriage and live together as members of a family. No promise will be implied to pay for services rendered by one person for another when at the time of their rendition there was no intent to charge or expectation of payment, as where services are rendered from motives of friendliness, neighborliness, kindness, or charity.

66 Am. Jur. 2d, *supra*, § 26 at 971. See, also, Annot., 54 A.L.R. 548 (1928).

In his brief, Thomas states: "Nothing in the facts presented by the Plaintiff-Appellant would indicate that his coaching of the Allstar team was gratuitous." Brief for appellant at 6. We do not agree with this statement. The evidence establishes without dispute that the Little League is a nonprofit organization whose objective is to direct baseball activities for the young people of Kearney; that membership is available to all persons interested in achieving that objective; that no compensation has ever been paid to Little League coaches; that it was the understanding that the coaches were volunteering their time for the benefit of the children involved; that the all-stars coach was selected from people who were successful coaches for the Little League for that year; and that Thomas was therefore a Little League coach before the alleged contract of June 15, 1993, was made. While the evidence shows that Thomas was asked to perform the services of head coach, that fact is insufficient to support a claim for compensation.

In summary, the evidence establishes that the coaches' services for the Little League were expected to be performed for charitable purposes and that no compensation was intended for any coach. Thomas had to be aware of these facts. There is no dispute that Thomas did not formally agree to coach for no compensation. However, Thomas agreed to coach for the Little League under circumstances and conditions inconsistent with any promise on the part of the Little League to pay for his ser-

vices, because the services were rendered to a community service organization under circumstances for which no reasonable person would expect compensation.

■ Thomas claims to have been discharged in violation of the employment agreement. "If one, at the time of rendering services for another, does not intend to make any charge against him therefor, he cannot later maintain an action to recover for the same, for the law cannot imply a promise contrary to the intention of the parties." Annot., 54 A.L.R. 550 (1928).

Even if Thomas were wrongfully discharged, he cannot belatedly sue on the basis of an implied promise to pay when, as we have concluded, there was no implied promise when the services were rendered. The Little League is entitled to judgment of dismissal as a matter of law. For this reason, we affirm the trial court's granting of summary judgment in favor of the Little League.

AFFIRMED.