HOPPER v. HOPPER.

1. LIMITATION OF ACTIONS—PAYMENTS.—If a debtor make payment generally to a creditor holding several claims against him, without instructions as to its application, the creditor may apply in whole or in part to one already barred and thus revive the remainder of the barred debt.

2. PAYMENT.—EVIDENCE of the handwriting of a credit indorsed on a note is competent before proof of payment as a circumstance tending to show an agreement between the parties, that whenever the maker paid anything on a note made for payee's benefit, such was to be credited on the note thus made and the note in suit.

3. WITNESS.—EVIDENCE is not incompetent because the witness swears "to the best of my knowledge," or "to the best of my recollection," or "that is my impression, to the best of my knowledge."

4. PLEADINGS—ANSWER—PAYMENTS.—EVIDENCE of payment by paying other debts for payee of note is incompetent, unless such payment is set up in the answer.

Before HUDSON, special J., Cherokee, January, 1901. Affirmed.

Action on two promissory notes by D. J. and C. C. Hopper, as administrators of W. Junius Hopper, against Samuel L. Hopper. The Judge charged the jury as follows:

"This action is brought by the administrators of the estate of W. Junius Hopper against Samuel Hopper upon two notes. The notes reading as follows: '$500.00. One day after date, I promise to pay W. J. Hopper $500 borrowed

money.  January 1st, 1884.  S. L. Hopper.'  '$550.00. One day after date I promise to pay W. J. Hopper $550 borrowed money.  January 1st, 1885.  S. L. Hopper.'  They are written one below the other, gentlemen, on the same piece of paper and pasted together.

"Now, the action is brought to recover the amount alleged to be due on these two notes that are out of date, upon the promise to pay the notes from certain alleged credits, to wit: The first credit that is alleged, the first payment alleged to have been made, is January 1st, 1896, and reads as follows: 'January 1st, 1896, received on the within notes $276.40, W. J. Hopper,' and is signed on the back of each.   The next payment that is indorsed upon the back of the notes is as follows: 'Paid on the within notes, June 4th, 1896, $288.05,' and not signed.   These notes, gentlemen of the jury, are not denied by the defendant in the case, but a general denial in the answer.   In the answer he sets up, as I conceive it, outside of the general denial, two defenses. One is, that $500 was paid on these notes under a contract, by which he was to get $500 for selling a certain tract of land, and that the land was sold according to the contract, and, therefore, a payment was made.   I say that is the first defense.   A payment of $500.

"The next defense is: The statute of limitations.   That this case is barred by the statute of limitations.   And then a specific denial that the plaintiffs are the owners of the notes.

"In order for the plaintiffs to recover in this case it is necessary for them to show that they are the owners of the notes, and that although out of date, yet that within the last six years certain payments were made on the notes, and upon these payments a new promise is implied.   In other words, that these payments took the case out of the statute of limitations.   Those are the points at issue.

"Now, gentlemen, I am requested to charge you certain propositions of law, by the defendant's counsel, which I will now note.

"1. 'A payment made on behalf of a debtor is not sufficient to avoid the statute of limitations, unless the additional fact appears that it was authorized by him or was adopted by subsequent ratification.' That is correct. A payment must have been made by himself or his agent.

"2. 'An admission to avoid the statute must amount to an unqualified acknowledgment of the debt, disconnected with any circumstances indicating an intention to avoid liability upon it.' That is not involved in this case, because it does not rest upon admission, it rests upon payments. The question is payment or no payment.

"3. 'A creditor having several claims against his debtor and receiving a general payment, may apply it to one of the claims which is out of date, but it does not revive the remainder of the debt. But he cannot divide the payment and apply a part to all.' In that, gentlemen, he is at liberty to do as he pleases, unless he is requested.

"4. 'A new promise which will take a claim out of the statute of limitations cannot be inferred from a payment, unless there is an actual affirmative intention on the part of the debtor to make a payment upon the debt claimed to be due. There must be an intention on the debtor's part to waive the bar of the statute.' It must be a payment, gentlemen, on that debt and must be so intended. If it is, it takes it out of the statute.

"5. 'Part payment within statutory period by a debtor who owes two clear undisputed debts, does not take either out of the statute of limitations, where a remittance is not specifically appropriated to either.' In reference to that, if it is within the statute bar, we have nothing to do with it. If the statute is bar and a general payment made upon the claims, as I said before, the creditor can apply a part to one and a part to the other, unless directed otherwise.

"6. 'If the debtor shall pay with one intent and the creditor receives with another, the intent of the debtor shall govern.' That is very true.

"7. 'The debtor must assent to any credits placed on the

claim barred by the statute of limitations by his creditor.' Certainly it must be a payment made by the debtor or at his direction.

"8. 'After the bar of the statute has barred a debt, the interest of the creditor to fabricate evidence is strong enough to overcome any presumption that might otherwise arise from an instrument made by him.' That is not complete within itself, and it requests me to charge you on the weight of the testimony. So I cannot charge that request.

"9. 'It is essential that an indorsement made on a note against which the statute of limitations has run at the time the indorsement was made, that such indorsement was made *bona fide* and with the privity of the debtor.' That is correct.

"10. 'The payment by operation of law or acknowledged by creditor on account of an equitable setoff or counter-claim which the debtor might insist upon, or which he has never claimed to have applied as such, is not such a payment as will operate to prevent the statute from running.' I cannot see any application in that request to this case, and, therefore, I do not charge it.

"11. 'A payment made by a debtor to whom he owes several distinct debts, without any direction as to its application, and immediately applied by the creditor to a debt barred by the statute of limitations, will not take the remainder of that out of the statute.'

"12. 'The mere indorsement of the credit on the notes is not sufficient, and they cannot be even read in evidence without proof that they had been made by or with the consent of the defendant, or actual proof that such payment had been made.' That is correct.

"Now, gentlemen, here is our statute which I will read to you, and by which you are to be governed as far as it applies to the case. After providing that claims of this kind shall be barred, then section 131 of the Code reads as follows: 'No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take

the case out of the operation of this title, unless the same be contained in some writing signed by the party to be charged thereby; but payment of any part of principal or interest is equivalent to a promise in writing.' So, gentlemen, the law of the case is simply this: If you should find as a fact that these payments were made upon these notes as indorsed here—when I say made, I mean made by the debtor or by his direction; if that be the case, then the plea of the statute of limitations amounts to nothing. Right upon that question, were these payments made upon these notes by the debtor as indorsed on that paper as it purports to be a payment, and reads as follows: 'January 1st, 1896, received on the within notes $226.40,' signed by W. J. Hopper. That of itself is a question. You will have to take all the testimony and decide that yourself. The second has no signature to it. Whether these payments were made, is a question for you, a question of fact for you; and I cannot help you, I cannot comment upon the testimony, and, therefore, it is left for you to say.

"In evidence in connection with these two notes is one that reads as follows: '$552.80. On or by the first of January, 1896, we, or either of us, promise to pay J. Q. Little or order, the sum of $552.80, for value received of him. Interest after maturity at eight per cent. This September 5th, 1895. W. J. Hopper, T. H. Littlejohn, S. L. Hopper.' Now, I cannot make any comment upon these things in evidence, upon these dates in evidence. It is a question of fact for you. The evidence as to what transpired in the bank and elsewhere, the testimony of all these witnesses, is for you; as I tell you, I cannot comment upon it, for if I could, then, if I could, under the statute, under the law of the State, I could give you my impression in regards to the testimony; but I cannot comment upon it, you have to do that—you are the sole judges of the facts.

"Now, gentlemen, one question is, did this debtor, S. L. Hopper, pay to his deceased brother the $500 claimed in connection with that land sale? Well, in order for it to be a

payment, you would have to find from the evidence that it was to be a payment, an agreement to be a payment, that such a contract existed between the parties. Did they come to a definite understanding? Then the other leading question is as to these payments here. If those payments on there were made upon the notes by his direction or by himself, it is not barred; and the only question is, what are you to do? If both payments were made, you will calculate the interest on the two notes up to the time of the first payment and give credit for that, provided it exceeds the interest; then that will give you a new principal, and you would calculate the interest up to the time of the second payment and give credit for that, then you would get a new principal. Start on that, on the balance up to the present time. If you find the $500 to be credited, you will also, from the testimony, fix what date it is to be credited on, for that must come off as a payment. If it was not a payment, you will pay no attention to it. If you conclude as a matter of fact that these payments were not made by the defendant, or at his direction, that is the end of the case. It is barred. I do not like to talk to you more than is necessary in regard to the law. I don't want to get your minds confused. I think I have instructed you in regard to the whole case.

"First, dispose of the $500 business. Say if it was a payment; if so, fix the date; if that was a payment and was made within the last six years, it is not barred. If it was no payment, the $500, pay no attention to it. Then determine whether these payments were made before it is out of the bar, the statute of limitations; if both a payment, give credit for only one, give credit and pass the other. Now, gentlemen, that is the whole case. Then there is a question as to the ownership of the notes. The administrators claim to own them. If you find for a fact that these notes at any time belonged to Littlejohn, and Littlejohn surrendered them to the administrators, that makes the administrators own them. If they are the owners, then determine the course. If there were no payments, find for the defendant.

9—61

If those payments were made, count up the interest, and find out the balance and sign your verdict, 'We find for the plaintiff so much.' If for the defendant, say 'We find for the defendant.' "

From judgment for plaintiffs, the defendant appeals on following exceptions :

"1. Because the Court erred in allowing the witness, Mrs. W. J. Hopper, to testify as to the handwriting of a credit made on the back of a note which was barred by the statute of limitations before such credit was made. The error complained of being that proof of the credit on a note barred by the statute of limitations cannot be given until after actual proof of payment has been made.

"2. Because the Court erred in allowing the first note of $500 to be admitted in evidence by the proof of the handwriting of the plaintiff's intestate, giving credit on the said note after the same had been barred by the statute of limitations, without further evidence to show that such credit was made with the knowledge and consent of the defendant, or that the defendant had actually made the payment entered on the back of the note. The error complained of being, it is respectfully submitted to this Court, that after a note has been barred by the statute of limitations, before the note can be admitted in evidence, or the credit on the said note admitted in evidence, there must be actual proof that such credit was made or entered on the back of the said note with the knowledge and consent of the defendant, or that the defendant had actually made payment to the plaintiff of the said amount to be applied as a credit on the said note.

"3. Because the Court erred in allowing the proof of credit by A. N. Wood, sworn to by the witness, A. N. Wood, as placed on the back of the notes as being sufficient to revive the notes. The error complained of being that there was no positive proof that the defendant had made the payments, or that he was present, or that he had authorized the credits to be placed on the said notes, or that he knew the credit had

been placed on the said notes; and especially is this true when defendant had other papers in the bank of the said witness, Wood, and upon which said witness, Wood, stated the same credit had been placed. It being respectfully submitted to this Court, that the defendant should have either directed the credit placed on the note sued on, or that he should have had knowledge that it had been placed thereon, or that it had been placed thereon by his consent.

"4. Because the Court erred in ruling that when the witness, J. Q. Little, was giving testimony as to his 'understanding' of a certain transaction, and when objected to by defendant's counsel as to his giving his understanding in the matter, in holding that 'understanding' means an agreement. The error complained of being, that an understanding by a witness who was not a party to the transaction may not mean an agreement, and an agreement can only be effected when the minds of both parties meet in the forming of a contract; whereas, one party might understand the matter one way and the other party an entirely different way.

"5. Because the Court erred in allowing the witness, J. Q. Little, to testify as to instructions which plaintiffs' intestate, Junius Hopper, had given to Mr. Wood, neither the witness, Little, nor the defendant in this action being a party to such transaction, and the defendant in this action not being present. The error complained of being that such instructions would be incompetent as to the defendant here, and also hearsay.

"6. Because the Court erred in allowing the witness, Little, to testify as to what transpired between himself and the plaintiffs' intestate, W. Junius Hopper, at the bank when the notes were deposited there, and as to instructions given at the bank at the time the notes were deposited there; the defendant in this action not being present and not having knowledge of such instructions. The error complained of being that such instructions would be hearsay evidence as

to this defendant, and such transactions would be incompetent to go to the jury as against this defendant.

"7. Because the Court erred in admitting the evidence of the witness, J. Q. Little, as to an understanding between himself and plaintiffs' intestate, Junius Hopper, as to where payments on other notes should be credited; the defendant in this action not being present or having any knowledge thereof. The error complained of being that payment on other notes were entirely foreign to this issue, and that any agreement made between the witness, J. Q. Little, and plaintiffs' intestate is as to this defendant hearsay and incompetent.

"8. Because the Court erred in refusing to allow the defendant to answer the question whether or not he had ever gone as security for his brother on other notes. The error complained of being that if the defendant answered that he had done so, it would establish a course of dealing and custom between the brothers and plaintiffs' intestate and the defendant, S. L. Hopper, and show about other notes in the bank of A. N. Wood, testified to by the witness, J. Q. Little, and of which by reason of this ruling this defendant was precluded from showing.

"9. Because the Court erred in refusing to allow the defendant as a witness to answer the following question: 'State whether or not you have paid other debts of your brother besides the one here charged.' The error complained of being that the answer, among other matters, sets up a defense of a general denial under which other payments may be proven, and from which by reason of this ruling the defendant was precluded.

"10. Because the Circuit Judge erred in failing or refusing to charge defendant's third request which was as follows: 'A creditor who has several claims against his debtor and receives a general payment, may apply it to one of the claims which is out of date, but it does not revive the remainder of the debt; but he cannot divide the payment and apply a part to all.' The error complained of being that, it

is respectfully submitted to this Court, even no direction may be given by the debtor as to the application of a general payment. Nevertheless, a creditor cannot apply it to a note barred by the statute of limitations, and thus take it out from the bar without the creditor's consent.

"11. Because the Court erred in refusing to charge defendant's fifth request, which was as follows: 'Part payment within statutory period by the debtor who owes two clear undisputed debts does not take either out of the statute of limitations, where the remittance is not specifically appropriated to either.'

"12. Because the Court erred in refusing to charge defendant's tenth request, as follows: 'The payment by operation of law or acknowledged by creditor on account of equitable setoff or counter-claim, which the debtor might insist upon or which he has never claimed to have applied as such, is not such a payment as will operate to prevent the statute from running.' The error complained of being that refusing to charge this request, he was in effect saying to the jury that plaintiffs' intestate, W. J. Hopper, who held the notes against the defendant herein, and for whom the defendant herein had indorsed a note of $500, when such payments were made on the note of $500 so indorsed that the said plaintiffs' intestate might apply the credits to the other note held by him against this defendant and against which the statute of limitations had run.

"13. Because the Court erred in failing to charge defendant's eleventh request, as follows: 'A payment made by a debtor to whom he owes several distinct debts, without any direction as to its application and immediately applied by the creditor to a debt barred by the statute of limitations, will not take the remainder of that debt out of the statute.' The error complained of here being that, in refusing to charge the said requests, it was practically holding that by such application to a debt barred by the statute without the knowledge or consent of the debtor, a creditor could revive a debt already barred by the statute."

*Mr. J. C. Jeffries,* for appellant, cites: *Mere indorsement of credit will not prove payment, but actual payment must be shown:* 3 Green. N. J. L., 298. *Creditor cannot divide payment, and application of part to barred debt will not revive it:* 19 Vt., 26; 1 Gray, 630. *Payment in nature of equitable setoff or counter-claim will not prevent statute from running:* 4 Or., 105.

*Messrs. Butler & Osborne* and *J. E. Webster,* contra, cite: *Payment not pleaded cannot be proved:* 50 S. C., 184; 10 S. C., 436. *In absence of direction by debtor, creditor may apply payment as he pleases:* 56 S. C., 442; 20 S. C., 42; 26 S. C., 155.

July 13, 1901. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This action was commenced some time in May, 1899, by plaintiffs as administrators of the estate of W. Junius Hopper, deceased, to recover the balance claimed to be due upon two promissory notes, executed by the defendant and made payable to plaintiffs' intestate, for borrowed money. The first of these notes bears date 1st January, 1884, and is payable one day after date, and is for the sum of $500. The second note, for the sum of $550, bears date 1st January, 1885, and is payable one day after date. These two notes were written on the same piece of paper, and upon the back of said paper the following indorsement appears: "Received on the within notes $276.40. W. J. Hopper," which bears date 1st January, 1896. The other indorsement, which is not signed by any one, reads as follows: "Paid upon within notes, June 4th, 1896, $288.05."

The complaint is in the usual form, except that there is a special allegation: "That the defendant made the following payments, and none other on said notes," proceeding to state the two payments above credited, and alleging that by reason of such payments the defendant made and entered into a

new promise to pay the balance remaining due on said notes, and alleging that such balance amounted, on the 1st day of May, 1899, to the sum of $1,639.36, and demands judgment for that amount.

The defendant, by his answer, sets up three defenses. 1st. A general denial of all the allegations of the complaint. 2d. That plaintiffs' intestate, who was a brother of defendant, promised that if defendant would effect a sale of a tract of land, in which plaintiffs' intestate and his brother, the defendant, were interested, for the sum of $5,000, that said intestate would pay defendant the sum of $500; that defendant did effect such sale, and thereby the note which defendant had given to plaintiffs' intestate for the sum of $500 was extinguished and paid. 3d. That the action brought by plaintiffs on the notes above stated is barred by the statute of limitations—defendant denying that he had ever made, either directly or indirectly, the payments credited on said notes. The case being thus at issue, came on for trial before his Honor, Judge Hudson, sitting as special Judge under appointment from his excellency the governor, and a jury. The jury found a verdict in favor of the plaintiffs for the sum of $563.36, and the defendant appeals from the judgment entered thereon upon the several grounds set out in the record, which, together with the charge of the Circuit Judge, will be incorporated by the Reporter in his report of the case.

Before proceeding to consider the questions presented by the exceptions, it will be necessary to make a general statement of the case as developed by the testimony. There is no dispute as to the fact that defendant did execute the two notes upon which the plaintiffs' action is based, and the real controversy seems to be as to whether the action is barred by the statute of limitations, or whether the case has been taken out of the operation of the statute by the alleged payments indorsed on said notes. Both of these notes show on their face that the bar of the statute was complete before either of the credits were indorsed, and, therefore, such

credits, standing alone, would not be evidence sufficient to take the case out of the operation of the statute (*Concklin* v. *Pearson,* 1 Rich., 391). Still, if there was other testimony sufficient to satisfy the jury that these payments were made with the consent of the defendant on the notes in suit, that would be sufficient to take the case out of the operation of the statute. That was a question of fact, which the Circuit Judge distinctly left to the jury; and although there was a conflict of testimony, the verdict of the jury must be regarded by this Court as final. The facts of the transaction are somewhat complicated, but as we understand the testimony adduced by the plaintiffs, it would seem that plaintiffs' intestate borrowed some money from Little and gave him a note to secure the payment of the sum borrowed, and also left with him, as collateral security, the two notes of the defendant, which constitute the basis of the present action. It also seems that plaintiffs' intestate also borrowed another sum of money from Little and gave him a note therefor, upon which the defendant was surety. All of these notes were left with Mr. Wood, a banker, for collection, and that the understanding was that whatever amount was paid by defendant on the note of plaintiffs' intestate, upon which he was surety, should be credited as a payment on the two notes of defendant upon which this action was based. Accordingly, Wood, the banker, testified that when the defendant paid him the $288.05, he credited the same by the direction of defendant upon the two notes now in suit as well as upon the $500 note upon which defendant was surety for plaintiffs' intestate, and that the entry of the credit for that sum on the two notes now in suit was made by him; "the notes and figures are in my handwriting, the balance is a stamp we use in the bank." As we have stated, there was other testimony on the part of the defendant in conflict with the foregoing, which, however, need not be specifically stated here, as this Court, in a case like this, has no jurisdiction to pass upon questions of fact.

The exceptions of appellant relating to the questions

raised by the plea of the statute of limitations, upon which the real controversy seems to turn, are based upon what we regard as a misconception of the doctrine of the application of payments. That doctrine may be thus stated : where one person is indebted to another upon two or more accounts, the debtor, when he makes a payment, may, *at the time of making such payment,* direct the application of the sum of money paid to whichever debt he pleases; but if he fails to give such direction at that time, then the creditor may, at any time thereafter, apply such payment to whichever debt he pleases, or may divide the amount of such payment, either equally or in any other proportion, between the several debts, as he may see fit to do. See *Mayor of Alexandria* v. *Patten,* 4 Cranch, 317, and *Field* v. *Holland,* 6 Cranch, 8, as reported in 1 Am. Leading Cases, 268 and 271, prepared by Hare & Wallace, and the notes appended. The doctrines there laid down have been recognized and followed in this State—*Heilbron* v. *Bissell,* Bail. Eq., 430; *Brice* v. *Hamilton,* 12 S. C., 32, and *Thatcher* v. *Massey,* 20 S. C., 542. The cases referred to in the elaborate notes to the cases of Mayor of Alexandria *v.* Patten, and Field *v.* Holland, as reported in 1 Am. Lead. Cases, *supra,* show that the great weight of authority, both in England and this country, is that a creditor may, unless the debtor otherwise directs, apply a payment to a note barred by the statute of limitations, and thus take such a case out of the operation of the statute. The only case mentioned to the contrary is that cited by appellant's counsel, *Ayer* v. *Hawkins,* 19 Vermont, 26-30, and that case may, and probably does, rest upon the civil law rule instead of the common law rule; which latter, as said by Harper, Chan., in *Heilbron* v. *Bissell, supra,* is the rule which prevails in this State. The several exceptions of appellant which rest upon the idea that a payment made by a debtor upon a note, the action upon which is barred by the statute of limitations, will not have the effect of reviving the right of action upon the balance of the debt, cannot be sustained, under the authori-

ties above referred to, and these exceptions must, therefore, be overruled. This view is not only sustained by the weight of authority, but also by reason and upon principle. The doctrine is well settled, in this State, at least, that a debt secured by a note, upon which the right of action was barred by the statute of limitations, is not thereby extinguished or paid, but the debt still remains due; and if the person can, by resorting to any other means than an action upon the note, recover his money, he may do so; and this, because the debt is not regarded as paid, but as still due, though not enforcible by an ordinary action at law. See *Wilson* v. *Kelly,* 19 S. C., 160, which, though a case in which a question arose as to the effect of a discharge in bankruptcy, was decided upon the principle declared to be applicable to a case of a debt barred by the statute. In both cases the action is barred, but the debt is not extinguished, and, on the contrary, remains still due. If this be so, then it follows that, upon the same principle, a creditor who holds two notes against a debtor, one of which is barred by the statute and the other is not, when he receives a payment from his debtor, who gives no directions at the time as to the application of the money paid, may apply the same to the note which, though barred by the statute, still remains a valid debt, and thus revives a right of action for the balance really due. If the debtor gives no direction as to the application of the money which he pays, and if the rule be as above stated, then the debtor must be regarded as having assented to whatever application the creditor chooses to make; and if he applies it to the note which is barred by the statute, the debtor must, in law, be assumed to have assented to such application; and if so, then, by the express terms of the statute, the right of action for the balance remaining unpaid is revived. So that the only remaining question is whether the defendant did assent to the credit of the amount which he paid on the $552 note, as surety for the plaintiffs' intestate, upon the notes upon which this action is based. That is a question of fact which was distinctly left to the jury, who have solved it in

favor of the plaintiffs; and their decision must be regarded here as final, unless there was some error, either in receiving incompetent testimony or in rejecting any competent testimony; and this we will proceed to consider.

The first and second exceptions being of a kindred character, may be considered together. They impute error in the reception of testimony to the fact that the credit on the note, first in date, was in the handwriting of the plaintiffs' intestate, and in allowing said note to be offered in evidence without further testimony as to the fact that such payment was made by defendant. It must be remembered that there was no contention on the part of plaintiffs that the payments indorsed upon the piece of paper upon which both of the notes were written, were made *directly* on such notes by the defendant, but the effort on the part of the plaintiffs was to show that there was an understanding between the parties, that whenever the defendant made a payment on the note for $552, to which the name of defendant appeared as surety for his brother, such payment should be credited on the notes in suit; and, therefore, the testimony objected to was competent, as a circumstance tending to establish the contention on the part of the plaintiffs. For the fact that the defendant had paid money as surety for his brother, while it would give him a claim on his brother for the amount so paid, would not operate as a *payment* on the notes in suit, unless there was an understanding to that effect between the parties. While this testimony may not have been competent as direct proof of the credit, yet it was competent as a circumstance tending to show that there was such an understanding; and that it was not received as direct proof, is shown by the remark of the Circuit Judge, "that does not mean that the note or credit is proven." It is manifest, therefore, that this testimony was received, not as proof of the credit, but simply as a circumstance tending to show that there was such an understanding between the parties as that mentioned above, and as such was clearly competent. These exceptions are overruled.

The third exception seems to impute error to the Circuit Judge in receiving the testimony of A. N. Wood as to the fact that he had indorsed the last credit on the notes in suit.   We are at a loss to conceive of any well founded objection to this testimony.   The fact that Mr. Wood, as many other prudent and cautious witnesses are in the habit of doing, expressed himself in the way he did—"to the best of his recollection," "I think Mr. S. L. Hopper authorized me to put it (referring to the credit) on those two notes," "that is my impression, to the best of my knowledge," &c., certainly cannot render the testimony *incompetent*.   At most it could only affect its weight with the jury; though we do not well see how it could even have that effect; for when asked, "Do you swear positively that Mr. Hopper told you to put it (referring to the credit) on those notes?" his answer was, "to the best of my knowledge, he did."   If the jury believed this testimony, as they no doubt did, then there was testimony sufficient to show that the defendant authorized the credit to be placed upon the notes in suit; and if so, then the case was taken out of the operation of the statute.   The third exception is overruled.

The fourth, fifth, sixth and seventh exceptions all referring to the testimony of the witness, Little, must likewise be overruled.   This testimony was but a link in the chain of circumstances tending to sustain the contention of the plaintiffs that there was an understanding that any payments made by defendant upon the $552 note, on which he was surety of plaintiffs' intestate, should go as credits upon the notes in suit, and was, therefore, competent.

The eighth and ninth exceptions will be considered together, as they impute error in rejecting the testimony of defendant tending to show that he had paid other debts as surety for his brother.   If the defendant had set up such alleged payments in his answer as a defense to this action, then we could see how the testimony was relevant.   But not having done so, we are unable to perceive the relevancy of the testimony excluded to any issue

presented in this case. He did set up as a payment, his claim against his brother for compensation for his services in the sale of the land above referred to, and this, we presume, was allowed by the jury, for their verdict was for $563.36; whereas the amount claimed in the complaint, as a balance due on the two notes, was the sum of $1,639.36. These exceptions are overruled. The remaining exceptions have already been disposed by what is said above.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.