14024

JOHNSON v. BROOME

(179 S. E., 315)

386

*Messrs. Blackwell & Smith* and *Richard E. Broome,* for appellant,

*Messrs. C. T. Graydon* and *Fred D. Townsend,* for respondent,

March 25, 1935.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, commenced in the County Court for Richland County, October 7, 1932, is a suit by the plaintiff, Mamie Dunlap Johnson, against the defendant, Richard E. Broome, executor of the last will and testament of W. C. Dunlap, deceased, for recovery of the sum of $1,410.00. In her allegations the plaintiff, alleging that the defendant is the duly qualified executor of the estate of W. C. Dunlap, deceased, alleges that between the years 1914 and 1921 she advanced to W. C. Dunlap the sum of $1,735.00 in cash and that the said W. C. Dunlap paid thereon the sum of $325.00, the last payment being made thereon in the year 1929, leaving a balance owing to the plaintiff of the sum of $1,410.00, and the plaintiff demands judgment against the defendant for that sum, stating that the defendant has refused to pay the same. In his answer, the defendant, for a first defense, denies each and every allegation contained in the said complaint except that the defendant is the duly qualified executor of said estate; for a second defense, alleges, on information and belief, that the only loans or advances made by plaintiff to W. C. Dunlap were made in the year 1914 and that the same were paid to the plaintiff by the said W. C. Dunlap a number of years before his death; and, for a third defense, on information and belief, "alleges that any sum or sums advanced or loaned by the plaintiff to W. C. Dunlap were loaned or advanced (and all payments made thereon) more than six years before his death, and are now barred by the Statute of Limitation aplicable thereto [Code 1932, § 388]." Issues being joined, the case was tried before his Honor, M. S. Whaley, Judge of

the said County Court, and a jury, May 10, 1933, resulting in a verdict for the plaintiff for the full amount·sued for, $1,410.00. A motion by the defendant for a new trial being refused, from judgment entered on the verdict, the defendant has appealed to this Court.

It clearly appears that the basis of the complaint is for money loaned at various times by the plaintiff to her brother, W. C. Dunlap, now deceased. The plaintiff was allowed to testify that she handed some of the money to her brother, personally, and that on other occasions she deposited certain sums to his credit in the bank. This testimony was objected to, was admitted over the objection, and the exceptions fairly present the alleged error in this ruling. In deciding the question here presented, we deem it appropriate to quote the following extract from the opinion in *Norris v. Clinkscales,* 47 S. C., 488, 492, 25 S. E., 797, 798, by that most intellectual jurist, the late Honorable William Christie Benet: "It may seem strange that after having been on our statute book for nearly 30 years, and after having been construed and elucidated by this Court in innumerable appeals, Section 400 of the Code should still appear to be hard to understand, and difficult to apply as a rule of evidence. And yet it is not strange when one regards the abnormal length of its periods, and the intricate involutions of its phraseology."

Notwithstanding the fact that Judge Benet tried to meet every contingency in this famous case, it seems that the decisions are somewhat at variance. In the case of *Monts v. Koon,* 21 S. C., 110, it was held: "The foundation of the defence was payment, payment by certain notes, which Koon in his answer claimed that he had placed in the hands of Fort for collection, and the evidence admitted was intended to sustain this defence. It showed that Koon had placed these notes in the hands of Fort, and it involved not only the act of Koon in putting the notes in Fort's hands, but also the act of Fort in receiving them. This was certainly a transaction between the two, and therefore the

testimony was in violation of the section of the code under consideration."

Opposed to this view is the case of *Corbett v. Fogle,* 72 S. C., 312, 51 S. E., 884, 886. In that case Fogle testified: "I paid my wife [deceased] the $100.00, her interest which she paid on the place." In passing upon the competency of this testimony, the Court says: "If Fogle has simply testified that he placed $100.00 in the hands of his wife, the testimony would have been admissible; but, when he further testified that the $100.00 was in payment of a certain interest, then this involved the act of the wife in so receiving it, and rendered the testimony incompetent."

The remarkable part of the decision in the *Corbett case* is that the extract from the case of *Monts v. Koon,* above set out, is quoted as authority for the holding above quoted. On the point involved it does not appear that either of these cases has been subsequently cited.

As between the two cases, we are inclined to think the case of *Monts v. Koon* should be followed and that the statement in the *Fogle case* should be overruled; if, indeed, the holding in the *Fogle case* can be considered more than *obiter dicta.*

Many cases have been cited in the briefs of the attorneys, but they merely go to show to what an extent the law has become confused. For instance, in the case of *Foggette v. Gaffney,* 33 S. C., 303, 12 S. E., 260, the plaintiff brought suit against the estate of Gaffney to recover the value of his work for certain building and repair work. The plaintiff was permitted to testify as to the work done on the premises of Gaffney while Gaffney was at home and could not have been ignorant of the work, on the ground that the plaintiff was testifying as to the acts done on his own account and not as to transactions with the deceased. It is hard to conceive how a contractor could repair one house and build another on lands of the owner, when the owner was present, unless it was done under some form of contract amounting to a transaction with the owner. Likewise, in the case of

*Sullivan v. Latimer,* 38 S. C., 158, 17 S. E., 701. In this case the testimony of the physician as to the time spent in looking after the health of the deceased was held to be competent because there was no mutuality between the services rendered by the doctor and the sick man. It is difficult to see how this conclusion was reached.

If there were no mutuality, there was no contract, either express or implied, and, if no contract, there was no debt; yet the physician was allowed to recover.

The principle announced in those cases is opposed to the doctrine as announced in *Martin v. Fowler,* 51 S. C., 499, 29 S. E., 261, wherein the Court inveighs against all efforts to obtain by indirection that which is forbidden directly by the statute. This ruling is also followed in the recent case of *Huntley v. Sullivan,* 170 S. C., 891, 170 S. E., 664.

It was, therefore, in our opinion, error to admit testimony by the plaintiff as to the fact of her personally giving the money to her brother for the reason expressed in the *Monts v. Koon case,* although the testimony of the independent act of the witness in depositing money in the bank to the credit of her brother, there being no additional facts or circumstances connected therewith, would be competent. The mere deposit of money in the bank may have been without the knowledge or consent of her brother and would, therefore, lack that element of mutuality which is necessary to a transaction *Jeffords v. Muldrow,* 104 S. C., 388, 390, 89 S. E., 357, 6 A. L. R., 755.

It is argued that the testimony of the witness Nipson removed all objectionable features covered by Section 692 of the Code, and as to this point our attention will now be addressed.

Miss Nipson was the sole beneficiary under the will of W. C. Dunlap and testified fully as to her knowledge of the facts involved in this suit, evidencing a thorough knowledge of the financial affairs of Dunlap and denying *in toto* the claim of the plaintiff. The witness was certainly

an interested person, although not a party to the suit. She was both a devisee and a legatee under the will. The Code provisions, Section 692, is that "when such * * * legatee [or] devisee * * * shall be examined on his own behalf in regard to such transaction or communication * * * then all other persons not otherwise rendered incompetent shall be made competent witnesses * * * on said trial or hearing."

There can be no question as to the competency of the testimony of Miss Nipson. In fact, no charge is made that her testimony was incompetent. The question is, Did her competent testimony render competent the otherwise incompetent testimony of the plaintiff? The decision of this question requires a close analysis of Section 692 of the Code.

This statute is intended to protect estates of deceased, insane, and lunatic persons from alleged communications and transactions with such persons when alive or when suffering under the disability mentioned. According to the wording of the statute, no person who has a legal interest which may be affected by the trial (using only that part of the statute applicable to Miss Nipson) shall be examined in regard to any transaction or communication between such witness and a person then deceased as a witness against a party then prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person or as assignee, committee of such insane person or lunatic. Miss Nipson did not testify *against* any party prosecuting or defending the suit in the capacity of executor, administrator, or any of the other classes above mentioned. Her testimony, although she was a devisee and a legatee, was against an alleged *creditor* of the estate and not against any one in the classes mentioned. The statute then proceeds: "But when *such* executor, administrator, * * * shall be examined on his own behalf;" then the door is opened to the witness and transactions and communications may be gone into by competent testimony. The word "such" which we have

italicized above is very significant. It means "as referred to," hence, the real meaning of this clause of the statute is, "but when the executor, administrator, etc., then prosecuting or defending the action," the word "such" referring to the capacity of members of the various classes referred to in a former part of the statute. In other words, the meaning is when one of the designated parties is a party to the action.

In *Brice v. Hamilton,* 12 S. C., 32, the defendant Hamilton was questioned as to certain transactions which he had with the deceased and this testimony was excluded. The subject covered by this testimony had been brought out from a witness offered by the plaintiff. It was then contended that this testimony of the disinterested witness made the testimony of Hamilton competent but the Court denied this contention. It held that if the testimony had been brought out by a party to the suit, one of the administrators, then the testimony of Hamilton would have been competent, otherwise not. So that if Broome, the defendant and the executor, had endeavored to testify relative to the claim of the plaintiff, then the testimony of the plaintiff would have become competent under the wording of the statute and the construction given it by the Court in *Brice v. Hamilton, supra.*

We have endeavored to show that the testimony of the plaintiff as to delivering money personally to the deceased was error, but was it prejudicial to the defendant? Numerous witnesses, friends of the deceased, had talked with his about his affairs and to all of them he said that he owed money to his sister, the plaintiff herein. He had talked of this indebtedness some two or three years before his death without stating the amount due, but to one witness he fixed the amount as being a little over $1,400.00, and this statement was made only two or three months before his death.

It has been held in several cases, such as *Charleston & W. C. Railway v. Gosnell,* 106 S. C., 84, 90 S. E., 264, L. R. A., 1917-B, 215, that incompetent evidence

received in the trial of a cause is not prejudicial unless it be reasonably calculated to affect the verdict of the jury. On the other hand, it has been held that it is a legal presumption that incompetent testimony of some probative value upon a material issue of fact is prejudicial. *Templeton v. Railway,* 117 S. C., 44, 108 S. E., 363; *Powers v. Rawls,* 119 S. C., 134, 112 S. E., 78. The testimony given by the plaintiff which we have found to have been incompetent was of probative value, was upon a material issue, and is, therefore, presumed to have been prejudicial to the defendant.

The only remaining question is as to the application of the statute of limitations to any part of the debt.

We agree with the holding of the lower Court that no part of the debt is barred by the statute. Our reason for this conclusion is that the debtor has the right to direct the application of payments to any one or more of his debts, but should no direction be given him, then the creditor may apply the payment in such manner as best pleases him. This is the rule which has long been applied in this state as will appear from *Park v. Brooks,* 38 S. C., 300, 17 S. E., 22, *Ewbank v. Ewbank,* 64 S. C., 434, 42 S. E., 194, and *Hopper v. Hopper,* 61 S. C., 124, 39 S. E., 366. See, also, *McGhee v. Montgomery,* 85 S. C., 207, 65 S. E., 721, 67 S. E., 246.

The judgment of the lower Court is hereby reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE STABLER, MR. JUSTICE BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN, concur.